******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS W. LANE, ZONING ENFORCEMENT
OFFICER OF THE TOWN OF CLINTON
*v.* JEFFREY S. CASHMAN ET AL.
(AC 38290)

Keller, Prescott and Beach, Js.

*Syllabus*

The plaintiff zoning enforcement officer of the town of Clinton sought a
permanent injunction to prohibit the defendant property owners from
keeping cows on their premises without a permit, and a mandatory
injunction to require the defendants to remove a metal corral from the
street line setback and to keep any permitted livestock in an appropriate
building. The plaintiff previously had issued to the defendants two writ-
ten orders to discontinue those activities and uses of their property.
The parties had discussions after the issuance of the first order to
discontinue, and the defendants moved the cows into areas that met
the setback requirements, but thereafter moved them back so that they
continued to violate that first order to discontinue. The defendants did
not appeal to the town Zoning Board of Appeals within fifteen days of
the issuance of either order to discontinue, as required by statute (§ 8-
7). The defendants filed a counterclaim and two special defenses alleging
that the activities at issue were lawful nonconforming farming uses
of their property and, thus, that they were entitled to constitutional
protection of those uses, which existed prior to the amendment of the
town's zoning regulations in 2012 that the plaintiff sought to enforce.
The trial court granted the plaintiff's motion to strike the counterclaim
and special defenses, concluding that they were legally insufficient
because the defendants had failed to exhaust their administrative reme-
dies by appealing to the board. The defendants thereafter filed three
special defenses, the first two of which alleged that the activities at
issue were lawful nonconforming uses of their property, and the third
of which alleged municipal estoppel. In response to a request to revise
by the plaintiff, the defendants deleted the first two special defenses,
and revised their third special defense to include claims of municipal
estoppel and that the defendants' farming activities at their property
were lawful pursuant to statute (§ 19a-341). The trial court granted the
plaintiff's motion to strike the revised third special defense, concluding
that it was improper because it alleged a preexisting nonconforming
use, which the court previously had stricken. The trial court also granted
three motions that the plaintiff had filed to preclude evidence at trial to
challenge the validity of the orders to discontinue, to preclude evidence
pertaining to the defense of municipal estoppel, and to preclude evidence
that would prove that the farming uses of the property were lawful,
nonconforming uses. Following a trial to the court, the trial court ren-
dered judgment for the plaintiff, from which the defendants appealed
to this court, claiming that the trial court improperly struck their revised
third special defense and improperly granted the plaintiff's motions in
limine. *Held*:

1. The defendants could not prevail on their claim that the trial court improp-
erly struck their revised third special defense and thereby prohibited
them from demonstrating that they had a legally protected nonconform-
ing right to use their property as a farm: the defendants' constitutional
challenge to the plaintiff's activities did not excuse their failure to avail
themselves of the administrative appeal process that was available to
them, as nothing in the record suggested that the relief sought by the
defendants could not have been obtained by resort to the administrative
remedy that they ignored, and the defendants did not demonstrate that
the board was unable to grant them any appropriate relief or to determine
whether the plaintiff properly found that a nonconforming use did not
exist on their property; moreover, the defendants did not present any
authority to support their assertion that the question of whether any
constitutionally protected nonconforming use of their property existed
was beyond the scope of the board and, thus, constituted an exception
to the exhaustion doctrine that permitted them to bypass available

administrative relief, as the defendants chose not to appeal within the time period set by the board, they had ample opportunity to demonstrate to the board that the farming uses of their property were nonconforming uses and presented no compelling reasons why that issue was not the proper subject of such an appeal, and nothing in the record suggested that the defendants could not have brought a timely appeal before the board while continuing to negotiate with the plaintiff in an effort to resolve the dispute.

2. The defendants' claim that the trial court improperly granted the plaintiff's motions to preclude certain evidence was unavailing, the defendants having failed to adequately analyze how that court's rulings likely affected the result of the trial: the defendants did not refer to any portion of the record for details concerning the excluded evidence or to any proffer they made to the trial court concerning evidence that would have been relevant to understanding their historic use of the premises, as well as the gravity and wilfulness of their zoning violation, they did not point to any zoning regulation to support a determination that their historic use of the premises was lawfully nonconforming, and they did not demonstrate how any excluded evidence would have proven a lack of wilfulness on their part; moreover, the record reflected undisputed facts, such as the defendants' admitted failure to exhaust their administrative remedies and their admitted violation of multiple zoning regulations, that supported the trial court's determination that injunctive relief was warranted.

Argued October 18, 2017—officially released January 30, 2018

*Procedural History*

Action for a permanent injunction to prohibit the defendants from conducting certain activities in violation of the zoning regulations of the town of Clinton, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendants filed a counterclaim; thereafter, the court, *Domnarski, J.*, granted the plaintiff's motion to strike; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion to strike; thereafter, the plaintiff withdrew the complaint in part; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion to substitute Eric Knapp as the plaintiff; thereafter, the court, *Aurigemma, J.*, granted the plaintiff's motions to preclude certain evidence; subsequently, the matter was tried to the court, *Aurigemma, J.*; judgment for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*Edward M. Cassella*, for the appellants (defendants).

*Sylvia K. Rutkowska*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendants, Jeffrey S. Cashman and Patricia Cashman, appeal from the judgment of the trial court rendered in favor of the plaintiff, Eric Knapp, the zoning enforcement officer for the town of Clinton.[1] The plaintiff brought the underlying action against the defendants to enforce orders to discontinue alleged zoning violations occurring at the defendants' property in Clinton. The defendants claim that the court erred in (1) striking their special defenses related to nonconforming uses and (2) granting the plaintiff's motions in limine. We affirm the judgment of the trial court.

In his original complaint dated September 6, 2012, the plaintiff alleged that the defendants, who are the owners of 66 River Road in Clinton, were in violation of several Clinton zoning regulations by virtue of their keeping and raising cows without a permit, constructing a metal corral within fifty feet of the street line and within thirty-five feet of the southeast property line, and utilizing the metal corral as a structure or enclosure in which to keep the cows.[2] The plaintiff alleged that, on January 26, 2012, he issued a warning of violation to the defendants with respect to their keeping of cows on the property without a permit and that, on March 13, 2012, he issued a warning of violation to the defendants with respect to their placement of the metal corral within the minimum setback requirements and the keeping of cows in the metal corral. The plaintiff further alleged that, on April 16, 2012, he issued to the defendants an order to discontinue their uses of the premises that violated the applicable zoning regulations, that the defendants did not file an appeal from the order within fifteen days of the issuance of the order, and that the defendants had failed to comply with the order.[3] In his prayer for relief, the plaintiff sought, inter alia, a permanent injunction prohibiting the defendants from keeping cows on the subject premises without a permit; a mandatory injunction requiring the defendants to remove the metal corral from the street line setback and to keep any permitted livestock in an appropriate building, stable, or enclosure; and civil penalties authorized by General Statutes § 8-12 for the defendants' failure to comply with the order to discontinue.

In their answer dated November 5, 2012, the defendants admitted their ownership of the subject premises and, with respect to the remainder of the allegations set forth in the original compliant, either denied the allegations or left the plaintiff to his proof. In a special defense dated November 5, 2012, the defendants alleged in relevant part that "[t]he complained of activities were nonconforming uses that predate the zoning laws the plaintiff is trying to enforce."[4] Also, in a counterclaim dated November 5, 2012, the defendants alleged that the plaintiff, by bringing "these complaints" against them, engaged in "extreme and outrageous" conduct that

caused the defendants "extreme emotional distress"; the plaintiff, "[b]y filing these groundless complaints," committed intrusions of a "highly offensive" nature against the defendants; and that the plaintiff had engaged in professional malpractice that caused the defendants to suffer damages. The defendants sought, inter alia, money damages and "[a] court order requiring . . . [the plaintiff] to cease harassing, selective enforcement of the zoning regulations against . . . [the defendants]."

The plaintiff filed a "motion to dismiss and/or strike" with respect to the defendants' counterclaim and special defense. The plaintiff argued that the counterclaim and special defense "merely seek to contest the validity of a zoning order issued pursuant to General Statutes § 8-12, from which the [defendants] did not timely appeal pursuant to General Statutes § 8-7. Their failure to exhaust that administrative remedy leaves this court without subject matter jurisdiction over their special defense and counterclaim." Alternatively, the plaintiff argued that each counterclaim count "[failed] to state a claim upon which relief can be granted under the facts alleged."

Over the defendants' objection, and after hearing argument on the motion, the court, *Domnarski*, *J.*, by order dated May 10, 2013, granted the plaintiff's motion. In striking the special defense, the court reasoned that it was "legally insufficient" because the defendants failed to exhaust their administrative remedies. In dismissing "[a]ll counts of the counterclaim," the court likewise relied on the fact that the defendants had failed to exhaust their administrative remedies, noting that "[i]n the counterclaim counts, the defendants seek a collateral attack on a zoning determination that they did not appeal from." On June 3, 2013, the defendants, pursuant to Practice Book § 6-15, filed a notice of intent to appeal from Judge Domnarski's May 10, 2013 dismissal of their entire counterclaim "until a final judgment rendered in said matter disposes of the case for all purposes and as to all parties."

In the absence of an objection, on July 3, 2013, the plaintiff filed a request for leave to file an amended complaint and an amended complaint for the purpose of incorporating allegations of additional zoning violations at the subject premises. The amended complaint added an additional count to the cause of action. In this second count, the plaintiff sought enforcement with respect to an order to discontinue dated November 15, 2012. In count two, the plaintiff alleged that the defendants engaged in multiple activities on the subject premises in violation of the Clinton zoning regulations. Specifically, the plaintiff alleged that the defendants "have sold, and continue to sell, firewood and mulch, or otherwise maintain a retail establishment on the premises"; "have brought, and continue to bring, wood,

brush, logs, wood chips, branches, and/or leaves onto the site from outside sources to process into firewood and mulch, or otherwise manufacture or process goods, on the premises"; "have participated, and continue to participate, in the wholesale of mulch on the premises"; "have stored, and continue to store, heavy equipment, trucks, and small equipment and machinery associated with businesses being conducted at the site on the premises"; "have stockpiled, and continue to stockpile, wood materials, including wood, wood chips and compost, beyond what is required for personal use on the premises and in contact with vegetation"; "have parked, and continue to park, several commercial vehicles which exceed the maximum vehicle weight limit on the premises"; "have parked, and continue to park, more than one commercial vehicle within the vehicle weight limit on the premises"; "have stockpiled and stored, and continue to stockpile and store, materials and equipment outside on the premises, including mulch, logs, firewood, log splitters, wood chippers, grinders, vehicles, loaders, and light and heavy construction equipment"; "have stored, and continue to store, more than two unregistered vehicles on the premises, including a recreational vehicle, a tractor for a tractor trailer, a dump truck, and an SUV"; "have constructed and maintained, and continue to maintain, a shed on the premises without a permit"; "have kept, and continue to keep, chickens and ducks on the premises without a permit and in excess of a total of ten"; "have conducted, and continue to conduct, a farming operation of raising, keeping and caring for livestock, poultry and ducks on the premises without a permit or special exception";[5] and have "kept, and continue to keep, livestock on the premises without any covered watertight container or containment on site for manure."

The plaintiff alleged that all of these activities violated specific zoning regulations, all of which were cited in the complaint; that he issued the defendants a warning of violation on October 18, 2012; that he issued the defendants an order to discontinue on November 15, 2012; that the defendants failed to comply with the order to discontinue; and that the defendants did not file an appeal from the order to discontinue within fifteen days of the issuance of that order.[6] Moreover, the plaintiff alleged that on March 13, 2013, the defendants notified him "that they intended to continue to regrind and sell wood chips from the premises," and that their conduct constituted a wilful failure to comply with the order to discontinue.

In his amended complaint seeking enforcement of both orders to discontinue, the plaintiff sought permanent and mandatory injunctive relief related to the defendants' activities on the premises, civil penalties for the defendants' wilful failure to comply with the orders to discontinue dated April 16, 2012, and November 15, 2012, and further just and equitable relief

deemed appropriate by the court.

The defendants filed an answer to the amended complaint dated August 22, 2013. Therein, the defendants generally denied the substantive allegations in the amended complaint, or left the plaintiff to his proof. Additionally, the defendants raised three special defenses. In the first special defense, the defendants alleged that, to the extent that the plaintiff alleged that they used the subject premises as a farm, such use was a legally permissible nonconforming use of the premises.[7] In the second special defense, the defendants alleged that, to the extent that the plaintiff alleged that they used the premises as a commercial nursery operation, such use was a legally permissible nonconforming use of the premises.[8] In the third special defense, the defendants, claiming that the plaintiff's conduct led them to believe that their activities at the subject premises were legally permissible, alleged a defense of municipal estoppel.

Subsequently, on September 6, 2013, the plaintiff filed a request to revise in which he requested that the defendants delete the first and second special defenses in their entirety and, with respect to the third special defense, state the special defense more particularly. In his request to revise, the plaintiff asserted that the first two special defenses were legally improper because they previously had been stricken by Judge Domnarski. Thereafter, on November 22, 2013, the defendants deleted the first and second special defenses in their entirety and repleaded the third special defense.

Following the revision, on December 24, 2013, the plaintiff moved to strike the repleaded third special defense in its entirety on the grounds that it failed to state a claim upon which relief could be granted and was, in part, unresponsive to the request to revise inasmuch as it injected into the special defense a new claim that appeared to challenge the validity of the orders, specifically, that the defendants' use of the subject premises was lawful pursuant to General Statutes § 19a-341.[9] The defendants filed an opposition to the motion to strike the third special defense. After the court, *Aurigemma*, *J.*, heard argument on the motion, on May 21, 2014, it granted the motion. In granting the motion, the court determined, first, that the defendants had failed to allege sufficient facts to support a claim of municipal estoppel because they had failed to allege that the plaintiff had induced the defendants to engage in the activities at issue at the subject premises. The court determined, second, that, in their revised answer, the defendants improperly had included revisions that had not been requested by the plaintiff in his request to revise and which were unrelated to the special defense of municipal estoppel.[10] Also, with respect to the addition of paragraph 10 of the revised third special defense, which raised a claim that was based on § 19a-341, the

court determined that it was improper because it "alleges preexisting nonconforming use, which has previously been stricken by this court."

Additionally, prior to the commencement of the trial, the plaintiff filed five motions in limine to preclude the defendants from presenting evidence for the purpose of (1) contesting the validity of the orders to discontinue dated April 16, 2012, and November 15, 2012; (2) proving a defense of municipal estoppel or laches; (3) demonstrating that relevant actions or decisions had been undertaken or made by any Clinton individuals or agencies other than the Clinton zoning authority; (4) demonstrating facts related to police reports and "claims of false or illegal entries into the record (specifically the zoning office 'street' file) by the plaintiff as zoning enforcement officer"; and (5) proving a defense of nonconforming farm use of the subject premises. The defendants objected to these motions. The court expressly granted the first, second, fourth, and fifth of these motions, but a ruling on the third motion, related to evidence concerning other agencies or individuals, does not appear in the record.

Prior to the hearing, the parties entered into a joint stipulation of facts, dated April 28, 2015, as follows:

"(1) The defendants . . . purchased the [subject premises] . . . and are the current owners.

"(2) The premises is located within a R-80 residential zoning district.

"(3) The defendants have kept, and continue to keep, cows on the premises . . . .

"(4) The defendants have constructed a metal corral within fifty feet from the street line and thirty-five feet from the southeast property line. . . .

"(5) On April 16, 2012, the plaintiff issued to the defendants an order to discontinue the keeping of cows within a metal corral, which was constructed and located within the minimum front yard setback for the R-80 zoning district (50 feet) and the minimum side property line setback for the R-80 zoning district (35 feet).

"(6) The defendants did not file an appeal from the order to discontinue to contest its validity within fifteen (15) days after the issuance of said order to discontinue pursuant to . . . General Statutes §§ 8-6 and 8-7 and the rules of the Zoning Board of Appeals of the Town of Clinton [board] . . . establishing a fifteen (15) day appeal period. . . .

"(7) The defendants have sold, and continue to sell, firewood and mulch on the premises.

"(8) On October 18 and November 15, 2012, section 24.1.21 [of the Clinton zoning regulations] stated that retail establishments, as a permitted use, were prohib-

ited in the R-80 district.

"(9) The defendants have brought, and continue to bring, wood, logs and wood chips onto the premises from outside sources to process into firewood and mulch.

"(10) The defendants have participated, and continue to participate, in the wholesale of mulch on the premises.

"(11) On October 18 and November 15, 2012, section 24.1.61 [of the Clinton zoning regulations] stated [that] manufacturing, processing or assembly of goods, as a permitted use, is prohibited in the R-80 district.

"(12) On October 18 and November 15, 2012, section 24.1.62 [of the Clinton zoning regulations] stated [that] warehousing and wholesale businesses, as a permitted use, are prohibited in the R-80 district.

"(13) The defendants have stored, and continue to store, heavy equipment, trucks, small equipment and machinery associated with the business being conducted at the site on the premises.

"(14) The defendants have stockpiled, and continue to stockpile, wood materials, including wood, wood chips and compost.

"(15) On October 18 and November 15, 2012, section 24.1.76 [of the Clinton zoning regulations] stated [that] storage of materials, which is dangerous due to explosion, extreme fire hazard and radioactivity, beyond what is required for person[al] residential use, as a permitted use, is prohibited in the R-80 district.

"(16) The defendants have parked, and continue to park, several vehicles, including two dump trucks, two mason trucks, a 3500 Dodge pickup and a six wheel tanker truck on the premises.

"(17) On October 18 and November 15, 2012, section 24.1.70 [of the Clinton zoning regulations] stated [that] contractor's businesses, associated building and storage yards, as permitted uses, are prohibited in the R-80 district.

"(18) On October 18 and November 15, 2012, section 26.1.4 (d) (1) stated that parking of commercial vehicles in excess of one and one-half ton gross vehicle weight, as an accessory use, is prohibited in the R-80 district.

"(19) The defendants have stockpiled and stored, and continue to stockpile and store, materials and equipment outside on the premises, including mulch, logs, firewood, a log splitter, wood chippers, vehicles and loaders.

"(20) On October 18 and November 15, 2012, section 26.1.4 (m) [of the Clinton zoning regulations] stated [that] outside storage areas, as an accessory use, shall not extend into the areas required for setbacks from

property line or residential district boundary lines; and section 26.1.4 (m) (1) [of the Clinton zoning regulations] stated [that] any permitted outside accessory storage areas shall be enclosed except for necessary access drive, by building and/or fence, walls, embankments or evergreen shrubs or trees so as to screen the storage area[s] from view from any other lot or from any street.

"(21) The defendants have kept, and continue to keep, chickens and ducks on the premises in excess of ten.

"(22) On October 18 and November 15, 2012, section 24.1.43 [of the Clinton zoning regulations] stated that chickens or other poultry, as a permitted use, are not to exceed a total of ten (10) on a lot.

"(23) The defendants have conducted, and continue to conduct, a farming operation of raising, keeping and caring for livestock, poultry and ducks on the premises.

"(24) On November 15, 2012, the plaintiff issued to the defendants an order to discontinue, listing numerous violations of the Clinton zoning regulations with activities on the site . . . .

"(25) The defendants did not file an appeal from the order to discontinue to contest its validity within fifteen (15) days after the issuance of said order to discontinue pursuant to . . . General Statutes §§ 8-6 and 8-7 and rules of the [board] . . . section IV, establishing a fifteen (15) day appeal period. . . .

"(26) On March 13, 2013, the defendants notified the plaintiff that they intended to continue to regrind wood chips and sell wood chips from the premises.

"(27) On March 28, 2013, the plaintiff, through counsel, issued to the defendants a letter advising them that the importation and processing of wood materials is a violation of the acts prohibited under section 24.1.61 of the Clinton zoning regulations and the order to discontinue dated November 15, 2012." (Citations omitted.)

The matter was tried before the court, *Aurigemma, J.*, on April 28, 2015. The court heard testimony from Lane, Knapp, and Jeffrey Cashman. Additionally, the parties presented several exhibits. On July 30, 2015, the court issued a memorandum of decision by which it rendered judgment in favor of the plaintiff, thereby enforcing the plaintiff's orders of April 16, 2012, and November 15, 2012. In its memorandum of decision, the court set forth the parties' stipulation of facts. Additionally, the court found that, after the plaintiff issued the April 16, 2012 order, which described the defendants' right to appeal, "the parties had discussions, and the defendants agreed to move the cows into the areas that met the setback requirements. The defendants did relocate the cows, but only for a short period of time, [before they] moved them back so that they continued to violate the April 16, 2012 order to discontinue.

"On February 1, 2012, the plaintiff issued a warning of violation of sections 7.5, 23.4, 24.1.57 and 4.1.74 of the [Clinton zoning] regulations to the defendants. The warning expressly advised the defendants to '[s]top the manufacturing of wood materials for sale and the stockpiling of wood and debris away from vegetative areas to prevent any possible ignition of the vegetation. Stabilize the site by properly installing erosion controls along all disturbed areas and stockpiles. Stop the import of materials such as logs, wood chips, branches, leaves and other land/tree clearing debris.' After inspection, on February 13, 2012, the plaintiff issued a second warning of violations that was identical to the February 1, 2012 warning. Thereafter, the defendants met with the plaintiff and agreed to reduce and eliminate the mulch piles, eliminate the use of outside mulch and provide a place for the animals outside of the setbacks. The defendants also advised the plaintiff in April, 2012, that they had stopped accepting outside wood and wood chips. Thereafter, the defendants violated their agreements and failed to comply with the February warnings.

"After the plaintiff inspected the premises and found that the defendants had not remedied various violations of the zoning regulations, on October 18, 2012, he issued a notice of violations of numerous sections of the regulations. The notice reminded the defendants of their previous agreements to bring the premises into compliance and expressly advised the defendants that their failure to remedy the violations could lead to further legal action and the imposition of penalties under the Connecticut General Statutes. Thereafter, on November 15, 2012, the plaintiff issued an order to discontinue, listing the numerous violations of the regulations about which the defendants had previously received notice. This order, like the April order, expressly stated that it 'may be appealed to the [board] within fifteen days of its receipt.'

"On March 13, 2013, the defendants' attorney . . . sent a letter to . . . [the attorney] who represented the plaintiff, advising her that since the Department of [Energy and] Environmental Protection did not require [Jeffrey Cashman] to obtain a permit to regrind and sell wood chips, [Jeffrey Cashman] intended to resume regrinding and selling wood chips on the premises. The letter did not explain how the position of the Department of [Energy and] Environmental Protection had any relevance whatsoever to the violation of the Clinton zoning regulations. On March 28, 2013 . . . [another attorney who] also represented the plaintiff, sent a letter to the defendants' attorney . . . advising that accepting wood chips for regrinding and sale would constitute a wilful failure to comply with the November 15, 2012 order to discontinue.

"On November 13, 2013, the defendants petitioned

to amend the Clinton zoning regulations to allow a number of the defendants' activities that are the subject of the orders to discontinue, including the mulching operation. The petition to amend was approved with modification on May 12, 2014. However, the defendants have never even attempted to take advantage of the amended regulations and, unbelievably, have not applied to obtain a special permit exception pursuant to the new regulations.

"[Lane] retired as zoning enforcement officer . . . and . . . [Knapp] became the Clinton [zoning enforcement officer] on May 1, 2014. He inspected the premises and found that almost all of the violations mentioned in the orders to discontinue still existed, including cows in the corral, smoking piles of mulch, and heavy machinery on the premises. [Knapp] testified that [Jeffrey Cashman] has made it clear that he has no intention of complying with the orders at issue. [Jeffrey Cashman's] own testimony made it clear that, essentially, he does not think the zoning regulations should apply to him because he's a farmer.

"The plaintiff has incurred $16,388.50 in attorney's fees and $412.20 in costs related to this action through May 1, 2015. Since the briefs in this case were filed on June 19, 2015, and July 7, 2015, the plaintiff has undoubtedly incurred additional legal expenses in connection therewith.

"The defendants have stipulated to the majority of the allegations in the plaintiff's complaint. They don't deny that they are in violation of the orders to discontinue and the regulations referenced therein. They just don't believe the orders are valid and/or that the orders should apply to them. However, the defendants may not contest the validity of the orders to discontinue in this zoning enforcement action because they failed to appeal those orders."

The court proceeded in its analysis to reject the defendants' argument that the injunctive relief requested by the plaintiff was inequitable. The court, citing relevant case law, observed that the granting of such relief must be compatible with the equities of the case, and went on to determine that equitable considerations weighed in favor of granting the plaintiff relief. The court stated in relevant part: "[T]he fact that a party will suffer irreparable harm as a result of a zoning enforcement injunction does not make the injunction inequitable. . . . In this case . . . the court finds that the equities patently lie with the town. The defendants have blatantly and defiantly violated multiple zoning regulations, failing to even attempt to lessen or erase those violations by applying for special permits." The court granted the plaintiff injunctive relief with respect to the activities and conditions at the subject premises that were the subject of the plaintiff's orders to discontinue. Moreover, the court ordered the defendants to pay a

fine and awarded the plaintiff attorney's fees and costs. This appeal followed. Additional facts will be set forth as necessary.

I

First, the defendants claim that Judge Domnarski and Judge Aurigemma erred in striking one of their special defenses, thereby prohibiting them from demonstrating that they had a legally protected right to use the subject premises as a farm on the ground that such use of their property was a nonconforming use that existed prior to the town's amendment of the zoning regulations in 2012 with respect to farms and livestock. We disagree.

We begin our analysis of this claim by reviewing some of the relevant procedural history set forth previously in this opinion. The record reflects that on May 10, 2013, Judge Domnarski struck the defendants' special defense that was included in their answer dated November 5, 2012, which they had filed in response to the plaintiff's original complaint. This special defense was that the subject property had been classified as farmland under Public Act 63-490 and that the activities described in the April 16, 2012 order to discontinue "were nonconforming uses that predate the zoning laws the plaintiff is trying to enforce." In granting the motion to strike, Judge Domnarski agreed with the plaintiff's arguments and determined that the special defense was "legally insufficient" because the defendants had failed to exhaust their administrative remedies by exercising their right to challenge the validity of the order by appealing it to the board.

After the plaintiff filed an amended complaint, the defendants filed an answer to the amended complaint. As we explained previously, the answer to the amended complaint originally contained three special defenses. The defendants deleted the first two of these special defenses in response to the plaintiff's request to revise. Thus, following its revision by the defendants, the answer set forth only one special defense that included a claim of municipal estoppel and a claim that the defendants' activities at the subject premises were protected pursuant to § 19a-341. In striking this special defense in its entirety, Judge Aurigemma determined that the defendants had failed to allege sufficient facts to demonstrate that the plaintiff had engaged in activities that induced them to engage in the conduct at issue at the subject premises. Additionally, Judge Aurigemma concluded that, insofar as the defendants had revised the special defense to include a claim pursuant to § 19a-341, such revision was legally improper. See footnotes 9 and 10 of this opinion.

In their argument concerning the present claim, the defendants focus solely on whether the court properly precluded them from setting forth their special defense on the basis of farming as a nonconforming use. Specifi-

cally, the defendants argue: "Throughout the record of the case, the defendant[s] [have] attempted to provide evidence that shows, unequivocally, that some, if not all, of the 'violations' existed prior to the revision of the zoning regulations on January 1, 2012, and were legal as of right uses on December 31, 2011. The defendants admittedly failed to appeal the [zoning enforcement officer's] orders to the [board]. The trial court should have [nonetheless] . . . allowed the defendants to proceed with their special defenses. Because the defendants' uses were legal nonconforming uses, the defendants were entitled to constitutional protection of those nonconforming uses that were on the property at the time of the amendment to the zoning regulations." The defendants proceed to argue that they operated a farm on the subject premises prior to January 1, 2012, that the zoning regulations at issue were amended to prohibit some of the defendants' activities on the subject premises on January 1, 2012, and that the plaintiff began enforcement action against the defendants approximately four months later. Additionally, the defendants argue that "[t]he facts are clear that once the town revised the regulations, the plaintiff began immediate enforcement against the defendants. Such behavior is a violation of the defendants' statutory and constitutional rights that are attached to property owners with nonconforming uses and, because of the egregious nature of the enforcement and the unconstitutional nature of the result, the doctrine of exhaustion of administrative remedies should not apply."

Additionally, in framing their claim, the defendants have referred to rulings made by Judge Domnarski *and* Judge Aurigemma. They argue that these rulings "prohibited [them] from raising the special defenses that they had a legal nonconforming right to use the property as a farm . . . ." Turning to the defendants' claim of error as it relates to Judge Aurigemma's ruling, we observe, once again, that, in this appeal, the defendants do not claim that Judge Aurigemma erroneously struck their special defense as it pertained to their claim of municipal estoppel or their reliance on § 19a-341. Instead, the defendants claim is limited to their assertion of a legally protected right to the nonconforming use of the subject premises as a farm. Although the defendants refer to Judge Aurigemma's ruling in their statement of the claim, they do not identify how Judge Aurigemma's ruling on the motion to strike harmed them or why it was erroneous. As counsel for the defendants acknowledged at oral argument before this court, Judge Aurigemma did not strike a special defense related to such a nonconforming use of the subject premises because, by the time that Judge Aurigemma ruled on the motion to strike, the defendants had deleted their first and second special defenses (related to nonconforming use) in their response to the plain-

tiff's request to revise. Thus, any claim of error by the defendants that Judge Aurigemma improperly struck their special defenses related to nonconforming use is belied by a simple review of the record. We are unable to review a ruling that was not made.

Thus, we turn to the defendants' claim of error as it relates to Judge Domnarski's ruling striking their special defense that they had a legally protected right to continue to conduct nonconforming farming activities at the subject premises.[11] Before discussing the propriety of that ruling, we address the plaintiff's argument that the defendants voluntarily waived appellate review of Judge Domnarski's ruling because, following that ruling, the plaintiff filed an amended complaint, the defendants filed an answer in response to the plaintiff's amended complaint, and, later, the defendants amended their answer and voluntarily deleted special defenses alleging nonconforming use.[12]

It is well established in our law that "[w]hen an amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment, and previous rulings on the original pleading cannot be made the subject of an appeal." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017); see also *Rockstone Capital, LLC* v. *Sanzo*, 175 Conn. App. 770, 788, 171 A.3d 77 (same), cert. granted on other grounds, 327 Conn. 968,     A.3d     (2017); *Ed Lally & Associates, Inc.* v. *DSBNC, LLC*, 145 Conn. App. 718, 746, 78 A.3d 148 (same), cert. denied, 310 Conn. 958, 82 A.3d 626 (2013). "When a defendant voluntarily files an amended or substitute answer after a former one has been adjudged insufficient on demurrer, he waives all right to except to the action of the court in sustaining the demurrer to the first answer." *Pettus* v. *Gault*, 81 Conn. 415, 418, 71 A. 509 (1908).

In the present case, following Judge Domnarski's ruling on the motion to strike on May 10, 2013, the defendants did not file an amended or substitute answer in response to the plaintiff's original complaint. Rather, on August 22, 2013, after the plaintiff filed a motion for default for the defendants' failure to file a responsive pleading to the amended complaint, the defendants filed an answer to the plaintiff's July 3, 2013 amended complaint. In their answer to the amended complaint, the defendants included two special defenses of nonconforming use, thereby reasserting the special defense related to farming activities that had been stricken by Judge Domnarski.[13] In his request to revise the answer to the amended complaint, the plaintiff requested that the first and second special defenses be deleted in their entirety as having been "previously alleged" by the defendants in their response to his original complaint

and having been "already stricken by Judge Domnarski" on the ground that the defendants failed to exhaust their administrative remedies. Although they had a right to object to any or all of the requested revisions; see Practice Book § 10-37 (b); the defendants did not do so.[14] Instead, they deleted the special defenses, thereby removing those special defenses from the trial court's consideration in adjudicating the merits of the case.

To clarify the narrow waiver issue before us, we reiterate that, presently, the defendants only challenge Judge Domnarski's ruling in striking their special defense related to farming activities on the subject premises. They deleted their special defense related to commercial nursery activities at the subject premises; see footnote 11 of this opinion; and no ruling was made with respect to that special defense. Moreover, they have not appealed from Judge Aurigemma's ruling striking their special defense that was based on municipal estoppel. The plaintiff's waiver argument is somewhat persuasive, for it is based on the defendants' voluntary decision to delete both their special defenses that were based on nonconforming use in response to the plaintiff's request to revise. The defendants, although failing to address the plaintiff's waiver argument by means of a reply brief, nonetheless rely on Judge Domnarski's ruling as a rationale for their failure to object to the request to revise, an undoubtedly futile endeavor that only would have compelled the court to revisit the issue of the validity of their special defenses.[15] We have not discovered any precedent that shares the unique procedural history presented in the present case and, thus, could be considered to be binding authority with respect to the issue. Lacking clearly applicable precedent, we turn to a review of the merits of the claim and conclude that Judge Domnarski's ruling was proper.

It is undisputed that the defendants did not exercise their right to appeal to the board from the plaintiff's April 16, 2012 order to discontinue within fifteen days of the receipt of that order. In moving to dismiss and/or strike the special defense at issue, the plaintiff argued that the court lacked subject matter jurisdiction to consider the special defense because the defendants failed to exhaust their administrative remedies by appealing to board within the time prescribed by the board. See General Statutes § 8-7.

In their written objection to the plaintiff's motion, submitted to the trial court, the defendants argued in relevant part that the exhaustion doctrine did not apply in this case because (1) the special defense was based on a determination that one or more zoning regulations were invalid, specifically, that by virtue of Public Act 63-490, the regulations on which the plaintiff relied are invalid or illegal and did not apply to the subject property, and (2) their special defense was based on the interpretation of a statute, specifically, that it required

the court to interpret Public Act 63-490, which, the defendants argued, "exempts them from the zoning regulations of Clinton by making their property a valid nonconforming use that predates the zoning regulations of Clinton" and that "[a] land owner is not required to appeal to an administrative agency where the interpretation of a statute is required." During argument on the motion, the defendants' attorney reiterated that the defendants intended by their special defense to challenge the validity of the zoning regulations "because Public Act 63-490 . . . effectively trumps these zoning enforcement regulations" and that their special defense required the court to interpret Public Act 63-490. The plaintiff reiterated the central premise advanced in his motion, namely, that the special defense at issue raised a garden variety claim of whether the defendants had a nonconforming use and that such issue should have been raised before the board because it was "clearly within [its] purview."

Before this court, the defendants argue that they wanted to demonstrate that some, if not all, of the conditions and activities at issue on the subject property existed prior to the time that the Clinton zoning regulations were revised on January 1, 2012, such that they were legal on December 31, 2011. The defendants argue that farming uses were "lightly regulated" prior to the revisions, but beginning on January 1, 2012, farming uses required a permit. The defendants argue that, as part of proving their special defense, they intended to present evidence to show that they had been operating a farm on the subject premises since 1988 and had constructed the enclosure for cows prior to January 1, 2012, the date when newly enacted regulations prohibiting livestock from being kept within the setback area went into effect. They argue that it was obvious that their farming activities predated the newly enacted regulations and that the plaintiff's conduct, in immediately enforcing the newly enacted zoning regulations with respect to their property was "egregious" because their activities clearly were legally protected as nonconforming uses. They argue that "[s]uch behavior is a violation of the defendants' statutory and constitutional rights that are attached to property owners with nonconforming uses . . . ."

The defendants argue that the present case falls into one of the narrow exceptions to the exhaustion doctrine. Relying on *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 4, 544 A.2d 152 (1988), the defendants argue that they excusably bypassed available administrative relief, specifically, appealing to the board, because "a constitutional question is involved and obtaining relief from the [board] would be futile." In this regard, the defendants argue that the question of whether any constitutionally protected nonconforming uses existed was beyond the scope of review by the board and that "this case presents a constitutional question as to whether

the plaintiff can eliminate a constitutionally protected nonconforming right just by the issuance of a cease and desist order that is not appealed." The defendants argue that the exception applies in this case to address what they describe as an "unconstitutional result" of the plaintiff's order. Additionally, the defendants argue that the plaintiff's actions "raised questions as to whether or not the newly enacted regulation[s] [were] invalid. The [board] was not in a position to make a determination as to whether or not the newly enacted regulation[s] [were] invalid, particularly, in [their] enforcement against the defendants." Without citing to any relevant authority, the defendants posit that the issue of whether a nonconforming use existed was simply "beyond the scope of the [board]."

Additionally, relying on *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 104–105, 616 A.2d 793 (1992), the defendants argue that they properly bypassed administrative relief because the plaintiff's "zoning action [was] so far outside [a] valid exercise of zoning power that public policy dictates that the aggrieved party be allowed to challenge the zoning authority in court." In this regard, the defendants rely, in part, on the fact that the plaintiff began his enforcement action soon after the zoning regulations were revised and that the order to discontinue had the effect of "eliminat[ing]" their nonconforming right to use the subject property as a farm. At oral argument before this court, the defendants clarified that the timing of the plaintiff's enforcement activities in relation to the revisions to the zoning regulations was sufficient to reflect that the plaintiff's zoning enforcement activities fell so far outside of the lawful or legitimate exercise of zoning power that they should be permitted to challenge the zoning authority in court.

Thus, the arguments raised by the defendants before Judge Domnarski with respect to exceptions to the exhaustion doctrine differ from those, discussed previously, that the defendants currently advance before this court. Before the trial court, the defendants' exhaustion arguments were dominated by a reliance on Public Act 63-490, an enactment to which the defendants do not even refer in their appellate brief. It would be particularly unfair, both to the trial court and to the plaintiff, for this court to overturn the trial court's ruling on the basis of constitutional and public policy arguments that were neither raised before nor addressed by the court.

Even if we were to consider the merits of the arguments on which the defendants currently rely, we would readily conclude that they are not persuasive and, thus, do not afford them a right to bypass the administrative remedies available to them.[16] A motion to strike is the procedural vehicle whereby a party may challenge the legal sufficiency of a special defense and, in ruling on

a motion to strike, the court "must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency." *Barasso* v. *Rear Still Hill Road, LLC*, 64 Conn. App. 9, 13, 779 A.2d 198 (2001). In the present case, the issue raised by the motion to strike concerned the exhaustion doctrine and, thus, the court's subject matter jurisdiction to consider the special defense rather than the legal sufficiency of the special defense. Accordingly, it is appropriate to view and review the ruling as one made in connection with a motion to dismiss. "The standard of review for a court's decision on a motion to dismiss . . . is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the [special defense] in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the [special defense], including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014). If the resolution of the jurisdictional issue hinges on relevant facts that are in dispute, the court may hold an evidentiary hearing to resolve them. Id., 523–24. In the present case, it is of no consequence that the court viewed the motion as it was framed by the parties, as a motion to strike, because the relevant facts were not in dispute in light of the parties' stipulation that the defendants did not pursue an appeal before the board.

The defendants argue that this case falls within an exception to the exhaustion doctrine because a "constitutional question is involved" and "[t]he [board] was not in a position to make a determination as to whether or not the newly enacted regulation was invalid . . . ."

In *Norwich* v. *Norwalk Wilbert Vault Co.*, supra, 208 Conn. 1, precedent on which the defendants expressly rely, our Supreme Court stated: "It is well settled that a jurisdictional prerequisite to seeking relief in a court of law is that all available administrative remedies must have been exhausted. . . . We have held, however, that under limited circumstances, there are exceptions to this principle. One such exception is that where the available relief is inadequate or futile, the administrative process may be bypassed. . . . [E]xhaustion of admin-

istrative remedies is generally not required when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency. . . . Generally, such challenges have been instituted by a plaintiff in a declaratory judgment action." (Citations omitted; internal quotation marks omitted.) Id., 4–5.

In *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 821 A.2d 725 (2003), our Supreme Court provided additional guidance with respect to this type of issue: "[T]here are recognized exceptions to the exhaustion doctrine, but we have recognized such exceptions only infrequently and only for narrowly defined purposes. . . . One such exception involves a challenge to the constitutionality of the statute or regulation under which an agency operates, rather than to the actions of the board or agency. . . . [T]he mere allegation of a constitutional violation [however] will not necessarily excuse a [party's] failure to exhaust available administrative remedies . . . . The test is whether the appeal would be futile because the administrative agency . . . lacks the authority to grant adequate relief. . . .

"Moreover . . . [s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. . . . [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." (Citations omitted; internal quotation marks omitted.) Id., 570–71; see also *General Dynamics Corp.* v. *Groton*, 184 Conn. 483, 490, 440 A.2d 185 (1981) (exhaustion doctrine does not apply to questions concerning constitutionality of statute granting administrative agency authority to operate); *Friedson* v. *Westport*, 181 Conn. 230, 233, 435 A.2d 17 (1980) (exhaustion doctrine does not apply to questions related to "very enactment" of regulations at issue).

Looking beyond isolated assertions by which the defendants purport to challenge the validity of the zoning regulations at issue, which are unaccompanied by any legal analysis, a careful review of the substance of the defendants' arguments reveals that the "constitutional question" that they sought to raise by means of their special defense simply was whether the plaintiff's enforcement activities were valid despite the fact that, following the enactment of the revised zoning regulations at issue, they had a constitutionally protected preexisting use resulting from their activities on the subject premises prior to January 1, 2012. As the defendants acknowledge ultimately, their special defense

was meant to challenge "the unconstitutional *result* of the plaintiff's illegal enforcement," but not the constitutionality of the regulations that the plaintiff purported to enforce. (Emphasis added.) The defendants' constitutional challenge to the plaintiff's activities does not excuse their failure to avail themselves of the administrative appeal process that was available to them. Although we recognize that "[a] party need not exhaust an inadequate or futile administrative remedy"; *Conto* v. *Zoning Commission*, 186 Conn. 106, 115, 439 A.2d 441 (1982); the defendants have not demonstrated that the board was unable to fulfill its customary administrative function in the present case by considering the appropriate evidence and determining whether the plaintiff properly determined that a nonconforming use did not exist, a determination made manifest by the issuance of the order to discontinue. Moreover, the defendants have not demonstrated that the board, in fulfilling its customary administrative function, was unable to grant any appropriate relief warranted in the present case with respect to the plaintiff's order to discontinue. Nothing in the record suggests that the relief sought by the defendants could not have been obtained by resort to the administrative remedy that they ignored.

Our Supreme Court has "held that the statutory scheme [which affords a right to appeal from the decision of an administrative officer or agency to the zoning board of appeals] reflects the legislative intent that the issue of what constitutes a nonconforming use should be resolved in the first instance by local officials. . . . [W]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. . . . Likewise, the validity of the order may not be contested if zoning officials seek its enforcement after a violator has failed to appeal." (Citations omitted; internal quotation marks omitted.) *Gelinas* v. *West Hartford*, 225 Conn. 575, 595, 626 A.2d 259 (1993).

The rationale in another decision of our Supreme Court applies with equal force to the present case: "Clearly the defendant had a statutory right to appeal the cease and desist order to the zoning board of appeals. The zoning board [of appeals] would in that proceeding determine whether the defendant, in fact, had a nonconforming use. The statutory procedure reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment. . . . Instead of following this administrative process to establish the legality of his use after the receipt of the order to cease and desist, the defendant elected to await the institution of an action by the town to enforce the

order. On the record of this case, we conclude that the trial court properly refused to resolve the issue of the defendant's special defense alleging a nonconforming use, since that issue was one properly for administrative determination in the first instance." (Citation omitted; footnote omitted.) *Greenwich* v. *Kristoff*, 180 Conn. 575, 578–79, 430 A.2d 1294 (1980). Accordingly, the defendants' futility argument is unpersuasive.

As the defendants properly observe, in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105, our Supreme Court, in rejecting a collateral attack upon a condition attached to a building application, stated that "there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted. We leave that issue to a case that, unlike this case, properly presents it." See also *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 150, 763 A.2d 1011 (2001) (rejecting claim that exception suggested in *Upjohn Co.* satisfied). The court in *Upjohn Co.* stated: "[W]e have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. . . . [This rule rests] in large part, at least in the zoning context, on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities." (Citations omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 102.

In arguing that this precedent permitted them to bypass the administrative remedies available to them, the defendants argue, inter alia, that they were faced with a fifteen day appeal period in which to appeal to the board, that they had complied with the plaintiff's initial orders and had made attempts to persuade the plaintiff that his zoning enforcement activities were unjust and illegal, that such discussions lasted beyond the appeal period, and that the plaintiff's orders had the effect of eliminating their nonconforming use rights with respect to the subject premises. The defendants challenge Judge Domnarski's ruling in striking their special defense, yet the defendants rely on "facts surrounding [their] decision not to appeal the orders" that were presented at the time of the trial, well *after* the time that Judge Domnarski considered and ruled on the motion to strike.

Having reviewed *Upjohn Co.* and its progeny, we are not persuaded that the facts of the present case are

sufficient to meet the "very high standard"; *Torrington* v. *Zoning Commission*, 261 Conn. 759, 769, 806 A.2d 1020 (2002); necessary to satisfy the narrow exception to the exhaustion doctrine on which they rely. Stripped of the defendants' rhetoric, their special defense was a means of demonstrating that a nonconforming use existed. The plaintiff, in issuing the order to discontinue, plainly disagreed with the defendants' position in this regard. That a property owner disagreed with the determination of a zoning enforcement officer hardly presents an extraordinary circumstance. Moreover, the defendants have not presented this court with any authority to support their assertion that "[t]he question of whether any constitutionally protected nonconforming uses [existed] is beyond the scope of the [board]." The defendants, having been apprised of their right to appeal, chose not to appeal within the time period set by the board. If, as they argue, their farming activities obviously were nonconforming uses of the property following January 1, 2012, they had an ample opportunity to demonstrate that fact before the board. They do not present any compelling reasons why the issue was not the proper subject of an appeal before the board or why, despite any ongoing efforts to persuade the plaintiff to rescind his order, they were unable to bring an appeal. Nothing in the record suggests that the defendants could not have brought a timely appeal before the board while simultaneously continuing to negotiate with the plaintiff in an effort to resolve the dispute.

For the foregoing reasons, we conclude that Judge Domnarski's ruling in striking the special defense was proper.

II

Next, we consider the defendants' claim that the court improperly granted three of the plaintiff's motions in limine. We disagree.

As explained previously in this opinion, the plaintiff brought five motions in limine in which he sought to preclude certain evidence. The defendants challenge the court's granting of three of those motions. The first motion pertained to evidence offered for the purpose of challenging the validity of the orders to discontinue dated April 16, 2012, and November 15, 2012. The second motion pertained to evidence offered for the purpose of proving a defense of municipal estoppel or laches. The third motion pertained to evidence offered for the purpose of proving a nonconforming farm use of the subject premises. In his written motions, the plaintiff argued in relevant part that any evidence by which the defendants sought to raise a collateral attack on the orders to discontinue, including any evidence offered to demonstrate that a nonconforming use existed, should be disallowed in light of Judge Domnarski's prior ruling that struck the defendants' special defense, the fact that the defendants had voluntarily

withdrawn their special defenses related to nonconforming use in response to his request to revise, and the defendants' failure to appeal the orders to the board. Moreover, the plaintiff argued, in relevant part, that evidence related to the issues of municipal estoppel or laches should be disallowed in light of Judge Aurigemma's prior ruling that struck the defendants' special defense that was related to these issues. Previously in this opinion, we discussed the foregoing procedural history in greater detail.

The defendants filed a written objection to these motions, in which they argued in relevant part: "The defendants intend to present evidence which will provide the court with the full history of the defendants' use of the property since they acquired the property in 1987. The defendants intend to present evidence concerning the steps that they have taken to improve their property and utilize it in a manner that they believed was consistent with the zoning regulations then in effect. The defendants intend to present evidence of their responses to the orders to discontinue and their obtaining and providing information concerning the nature of their use. . . . All of the evidence that the defendants intend to introduce is relevant to the court's central determination as to whether or not the permanent injunction should be granted." The defendants argued that because the plaintiff has invoked the court's equitable powers by seeking a permanent injunction with respect to the defendants' farming activities on the subject property, the court was obligated to consider the equities of the case and to assess the gravity and wilfulness of the violation and the potential harm to the defendants. The defendants argued: "Although the defendants failed to appeal the orders to discontinue, the court must look to the historic use of the property in ruling on whether the equities will be served in granting this injunction. . . . The evidence that the defendants seek to admit will provide the court with evidence that is necessary for the determination regarding the gravity and wilfulness of the violation as well as the potential harm [to the] defendants. The evidence will include the historic use of the property, the plaintiff's inspections of the property, town regulation of the property and the defendants' responses to the orders to discontinue." (Citation omitted; internal quotation marks omitted.)

Initially, during oral argument on the motions, the defendants' attorney argued in relevant part: "I disagree that we cannot challenge the validity of the orders [to discontinue] because the court has the ultimate discretion as to whether or not those orders should be upheld and turned into permanent injunctions in favor of the town." The defendants' attorney argued that the evidence at issue, with respect to nonconforming use, was necessary so that the court would have "a full picture" of all of the facts surrounding the orders to discontinue

and that such evidence was relevant to the equitable issues before the court in determining whether it should grant the plaintiff permanent injunctive relief. Later, the defendants' attorney appeared to have modified his argument slightly by stating that the defendants did not intend "necessarily" to challenge the validity of the orders to discontinue, but to present evidence that was relevant to a determination of what injunctive relief, if any, was warranted.

During oral argument on the motions, the plaintiff's attorney argued in relevant part that, despite the equitable considerations that were before the court, the defendants' position, that they should be allowed to present evidence in an attempt to demonstrate a nonconforming farm use or to otherwise challenge the validity of the orders to discontinue, would permit them, effectively, to transform the case into the administrative appeal that the defendants chose not to pursue.

With respect to the motions in limine pertaining to evidence of nonconforming use or evidence that otherwise would effectively challenge the validity of the orders to discontinue, the court, *Aurigemma, J.*, agreed with the plaintiff's arguments and granted the motions in limine related to such evidence. The court stated that the defendants had not pursued an administrative appeal. With respect to the motion in limine pertaining to the special defense of estoppel or laches, the plaintiff's attorney observed that the court already had stricken the special defense of the defendants to which such evidence would have pertained. The defendants' attorney acknowledged that the parties already had presented relevant arguments in this regard in the context of the motion to strike that special defense. The court granted the motion.

Presently, the defendants argue that the court's rulings were erroneous because in so ruling the court prohibited them from presenting an equitable defense to the zoning enforcement action. The defendants argue: "In this case, although the defendants failed to appeal the orders to discontinue, the court must look to the historic use of the property in ruling on whether the equities will be served in granting this injunction." They argue: "The evidence that the defendants attempted to admit would have provided the trial court with evidence that was necessary for the determination regarding the gravity and wilfulness of the violation as well as the potential harm to the [defendants]. . . . [T]he evidence will include the historic use of the property, the plaintiff's inspections of the property, town regulation of the property and the defendants' responses to the orders to discontinue." (Internal quotation marks omitted.) Additionally, the defendants argue: "In the present matter, the defendants failed to appeal the cease and desist orders due to their belief that the matters would be amicably resolved. We do not believe

that the mere failure to timely appeal the matter is sufficient to have the nonconforming uses extinguished. In reviewing the orders, it does not appear as though [the] plaintiff ever considered the property was a farm or understood that the farm use was permitted without a zoning permit until December 31, 2011." (Internal quotation marks omitted.)

Primarily, the plaintiff argues that the defendants have failed to claim, let alone demonstrate, that the court's rulings were harmful such that the disallowed evidence likely would have affected the result of the trial. Also, the plaintiff argues that the court's rulings reflected a proper exercise of its discretion because the equitable nature of the proceeding did not limit the court's discretion in the manner claimed by the defendants.

The defendants urge us to review the court's rulings de novo because the court based its evidentiary rulings on its resolution of a question of law, specifically, whether their failure to exhaust their administrative remedies precluded them from presenting "any evidence concerning their historic use of the property or the regulations that had been in effect on December 31, 2011." Also, the defendants argue that the rulings require that we review questions of law, including "whether the defendants were entitled to a constitutional review of the elimination of the nonconforming rights, whether the plaintiff's actions deprived the defendants of constitutionally protected rights and whether this constitutional question presents an exception to the exhaustion of administrative remedies rule." The plaintiff urges us to apply the deferential abuse of discretion standard of review to the claimed errors.

Here, it is apparent that the court determined that the evidence at issue was inadmissible because (1) the defendants failed to exhaust their administrative remedies, (2) Judge Domnarski previously struck the special defense of nonconforming use, and (3) the court previously struck the special defense of equitable estoppel. The defendants urge us to reconsider whether the evidence at issue related to the historic use of the subject property, the zoning regulations in effect on December 31, 2011, and estoppel nonetheless was admissible in the present enforcement action. We note, however, that we already have determined in part I of this opinion that the court properly struck the special defense of farming as a nonconforming use, and the defendants do not challenge Judge Aurigemma's ruling that struck their special defense that was based on estoppel. At no time did the court strike the voluntarily deleted special defense of operating a commercial nursery as a nonconforming use.

We recognize that the function performed by the court in issuing the challenged evidentiary ruling dictates our scope of review. See *State* v. *Saucier*, 283

Conn. 207, 219, 926 A.2d 633 (2007). Regardless of whether we review the rulings under a plenary standard of review or under an abuse of discretion standard of review, it remains the defendant's burden on appeal to demonstrate that the court's evidentiary rulings were harmful. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 366, 926 A.2d 1024 (2007).

As the plaintiff aptly observes, the defendants' brief does not adequately set forth an analysis of how the court's exclusion of evidence affected the final result of the proceeding. Faced with an appellant's failure adequately to brief how a challenged evidentiary ruling was harmful, both this court and our Supreme Court have declined to review a claim of error related to such ruling. See, e.g., *Saint Bernard School of Montville, Inc.* v. *Bank of America*, 312 Conn. 811, 823, 95 A.3d 1063 (2014); *State* v. *Toro*, 172 Conn. App. 810, 813, 162 A.3d 63, cert. denied, 327 Conn. 905, 170 A.3d 2 (2017); *In re James O.*, 160 Conn. App. 506, 526, 127 A.3d 375 (2015), aff'd, 322 Conn. 636, 142 A.3d 1147 (2016).

The consequence of the defendants' failure to analyze the issue of harm adequately is that we are left to speculate with respect to the content and significance of the evidence that was excluded by the court's rulings. The defendants argued before the trial court that they would have presented evidence relevant to an understanding of the historic use of the subject premises, as well as the gravity and wilfulness of the zoning violation.[17] In their brief, the defendants do not draw our attention to any proffer made by them to the trial court and, beyond conclusory statements concerning the existence of a nonconforming use, the record does not clearly describe the content of the evidence that the court excluded.[18]

In their appellate brief, the defendants state in broad terms that the court erroneously excluded evidence concerning "the historic utilization of the property, the previous versions of the regulations under which the defendants acted and the unreasonableness of the plaintiff when considering the history prior to January 1, 2012." Apart from failing to refer us to any portion of the record for details concerning the excluded evidence, the defendants fail to attempt to demonstrate how the excluded evidence was likely to have affected

the result—a showing that, on the scant record before us, is not at all self-evident. As the defendants assert, "[e]ven in an action brought by a zoning enforcement officer to require conformity with the zoning regulations, the granting of injunctive relief, which must be compatible with the equities of the case, rests within the trial court's sound discretion. . . . Those equities should take into account the gravity and wilfulness of the violation, as well as the potential harm to the defendants." (Citation omitted.) *Johnson* v. *Murzyn*, 1 Conn. App. 176, 183, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). "This court previously has observed that [t]here is a general principle that a court of equity will balance the equities between the parties in determining what, if any, relief to give. The equities on both sides must be taken into account in considering an appeal to a court's equitable powers. An equity court wisely considers the relative positions of the parties and makes a decree that does substantial justice to all. It is the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. . . . [C]ourts should not intervene unless the need for equitable relief is clear, not remote or speculative. Thus, a court of equity should not grant an award which would be disproportionate in its harm to the defendant and its assistance to the plaintiff." (Internal quotation marks omitted.) *Steroco, Inc.* v. *Szymanski*, 166 Conn. App. 75, 90–91, 140 A.3d 1014 (2016).

At the core of the defendants' claim is their belief that a nonconforming use existed and that the plaintiff unjustly deprived them of such use. General Statutes § 8-2 (a), as amended by Public Acts 2017, No. 17-39, § 1, provides in relevant part that zoning regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. Such regulations shall not terminate or deem abandoned a nonconforming use, building or structure unless the property owner of such use, building or structure voluntarily discontinues such use, building or structure and such discontinuance is accompanied by an intent to not reestablish such use, building or structure. The demolition or deconstruction of a nonconforming use, building or structure shall not by itself be evidence of such property owner's intent to not reestablish such use, building or structure." A nonconforming use has been defined as "a use or structure [that is] prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations [were] adopted." (Internal quotation marks omitted.) *Stamford* v. *Ten Rugby Street, LLC*, 164 Conn. App. 49, 71, 137 A.3d 781, cert. denied, 321 Conn. 923,

138 A.3d 284 (2016). "A [nonconforming] use is merely an existing use, the continuance of which is authorized by the zoning regulations. . . . Stated another way, it is a use . . . prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations [were] adopted. . . . [T]he rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the [relevant] zoning regulations." (Internal quotation marks omitted.) *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 25, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008). "For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be lawful and second, it must be in existence at the time that the zoning regulation making the use nonconforming was enacted." (Emphasis omitted; internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 91–92, 527 A.2d 230 (1987); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 2:2 p. 28 ("[a] nonconforming use is one that was in existence at the time that the zoning regulation making the use nonconforming was enacted and which was previously lawful"). "The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid." *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993).

Although the defendants bear the burden of demonstrating that the exclusion of evidence and, particularly, the exclusion of evidence of a nonconforming use, likely affected the result of the trial, they do not demonstrate how the record justifies that they were prepared to present such evidence to the court. Although they argue that, on and before December 31, 2011, they used the subject property as a farm, they do not point to evidence, or proffered evidence, in the record, or to any applicable zoning regulation in effect prior to January 1, 2012, to support a determination that their historic use of the subject premises was *lawfully* nonconforming. Additionally, by reference to the record, they do not demonstrate how any excluded evidence would have proven a lack of wilfulness on the defendants' part.

Instead, the record reflects the existence of many undisputed facts, all of which tend to support the court's determination that injunctive relief was warranted. Specifically, the facts reflect that the defendants admittedly failed to exhaust their administrative remedies by appealing from either of the orders to discontinue and that they admittedly violated multiple zoning regulations and manifested to the plaintiff an intent to continue activities that violated zoning regulations.[19] Additionally, in determining that "the equities patently lie with [the plaintiff]," the court found: "The defendants have blatantly and defiantly violated multiple zoning

regulations, failing to even attempt to lessen or erase those violations by applying for special permits."

The defendants do not afford this court any basis on which to conclude that the excluded evidence would have tipped the balance of the equities in their favor. For the foregoing reasons, we reject the claim that the court's evidentiary ruling was erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In 2012, the underlying action was commenced by Thomas W. Lane as zoning enforcement officer for the town of Clinton. On September 23, 2014, prior to the trial, Lane moved to substitute Knapp as the plaintiff in the present action because, on May 1, 2014, Knapp had assumed the position of zoning enforcement officer for Clinton. The court granted the motion. Because Lane and Knapp appear in the same representative capacity and it is not necessary to our analysis to distinguish between them, in this opinion, we will refer to both Lane and Knapp as the plaintiff.

[2] The plaintiff alleged in part: "The defendants' use of the property . . . violates Clinton zoning regulations, sections 24.1.42, which states that the keeping and raising of cows requires a zoning permit from the zoning enforcement officer; 25.1, which states that 'no structure shall extend into any setbacks required by [the zoning] regulations'; 25.10.6, which states that the minimum setback from the street line in a R-80 district is fifty feet; 25.10.8, which states that the minimum setback from the property line or side property in a R-80 district is 35 feet; and 26.1.4, which states that 'all livestock shall be kept in a building, stable or enclosure, not less than the legal setback for the appropriate zone for any abutting residential property.' "

[3] It is undisputed that the order of April 16, 2012, stated, in relevant part: "This violation must be remedied within ten (10) days of receipt of this notice. Failure to correct these violations within the above stated time frame may result in the party being fined $250 per day for each day the violation(s) continues and/or may result in a civil penalty not to exceed $2500 and/or result in legal action to enforce the order and to obtain penalties and fines accruing pursuant to . . . General Statutes § 8-12.

"This order may be appealed to the Zoning Board of Appeals of the Town of Clinton within fifteen days of its receipt."

[4] The special defense stated: "1. The subject property has been classified by the town of Clinton as farmland under Public Act 63-490 since 1990 and is, therefore, a legally nonconforming use of the subject property not subject to zoning laws passed after its classification as farmland under Public Act 63-490.

"2. The complained of activities were nonconforming uses that predate the zoning laws the plaintiff is trying to enforce."

In general terms, No. 63-490 of the 1963 Public Acts, codified in General Statutes § 12-107a et seq., allows certain types of land, including farmland, to be assessed at its use value, rather than at its fair market value, for purposes of local property taxation.

[5] Additionally, the plaintiff alleged that the defendants have caused dust and smoke; "[o]dors, fumes and/or gasses"; have made "[n]oise"; have failed to have proper provisions for the storage of waste; and have stockpiled wood materials in contact with vegetation. Prior to trial, the plaintiff withdrew these parts of the second count of the amended complaint.

[6] It is undisputed that the order of November 15, 2012, stated, in relevant part: "These violations must be remedied within ten (10) days of the receipt of this notice. Failure to correct these violations within the above stated time frame may result in the party being fined $250 per day for each day the violations continue and/or may result in a civil penalty not to exceed $2500 and/or result in legal action to enforce the order and to obtain penalties and fines accruing pursuant to . . . General Statutes § 8-12.

"This order may be appealed to the Zoning Board of Appeals of the Town of Clinton within fifteen days of receipt."

[7] The first special defense stated: "1. The various uses described in the plaintiff's amended complaint are uses directly associated with a farm on said premises, which is a specifically permitted use under the zoning regulations of the town of Clinton, which use has been established and operated by the defendants and their predecessors in ownership of said property for a period of at least thirty (30) years.

"2. The above described use of the property predates the present zoning regulations, which require a special permit or a special exception for said use, and hence is a permitted, preexisting, nonconforming use."

[8] The second special defense stated: "1. In addition to the use of said premises as a 'farm,' said premises also had been used by the defendants and their predecessors in title as a commercial nursery operation, and as such, is a legally permitted, preexisting, nonconforming use under the Clinton zoning regulations."

[9] General Statutes § 19a-341 provides in relevant part: "(a) Notwithstanding any general statute or municipal ordinance or regulation pertaining to nuisances to the contrary, no agricultural or farming operation, place, establishment or facility, or any of its appurtenances, or the operation thereof, shall be deemed to constitute a nuisance, either public or private, due to alleged objectionable (1) odor from livestock, manure, fertilizer or feed, (2) noise from livestock or farm equipment used in normal, generally acceptable farming procedures, (3) dust created during plowing or cultivation operations, (4) use of chemicals, provided such chemicals and the method of their application conform to practices approved by the Commissioner of Energy and Environmental Protection or, where applicable, the Commissioner of Public Health, or (5) water pollution from livestock or crop production activities, except the pollution of public or private drinking water supplies, provided such activities conform to acceptable management practices for pollution control approved by the Commissioner of Energy and Environmental Protection; provided such agricultural or farming operation, place, establishment or facility has been in operation for one year or more and has not been substantially changed, and such operation follows generally accepted agricultural practices. Inspection and approval of the agricultural or farming operation, place, establishment or facility by the Commissioner of Agriculture or his designee shall be prima facie evidence that such operation follows generally accepted agricultural practices. . . .

"(c) The provisions of this section shall not apply whenever a nuisance results from negligence or wilful or reckless misconduct in the operation of any such agricultural or farming operation, place, establishment or facility, or any of its appurtenances."

[10] In revising the third special defense, in which the defendants originally had raised a claim of municipal estoppel, the defendants, inter alia, inserted a new paragraph, numbered as paragraph 10, which provides: "In addition, the defendants claim that their activities on said premises with respect to the mulching operation as a farming activity, together with other farming activities conducted on said premises by them, are protected and permitted under the provisions of [General Statutes § 19a-341]." In his memorandum of law in support of the motion to strike the third special defense, the plaintiff argued that this newly added paragraph should be stricken because it was unresponsive to the request to revise and, in light of the defendants' failure to exhaust their administrative remedies, jurisdictionally improper as a means of demonstrating that the defendants were lawfully using the subject premises.

[11] We reiterate that Judge Domnarski struck the special defense set forth in the defendants' answer to the plaintiff's original complaint. This special defense pertained to nonconforming *farming activities* at the subject premises. The defendants did not plead a special defense of nonconforming use related to *commercial nursery activities* at the subject premises until after the plaintiff amended his complaint to seek enforcement of the order to discontinue dated November 15, 2012.

[12] The defendants did not file a reply brief to respond to this waiver argument. At oral argument before this court, the defendants' attorney relied on the fact that the defendants had filed a notice of intent to appeal from Judge Domnarski's ruling dismissing their counterclaim. The defendants' notice of intent to appeal *from Judge Domnarski's dismissal of their counterclaim* does not affect our analysis of the waiver issue concerning the striking of their special defense.

[13] Count one of the amended complaint was related to the zoning violations addressed in the order to discontinue dated April 16, 2012. Count two of the amended complaint was related to the zoning violations addressed in the order to discontinue dated November 15, 2012. The special defenses in the answer to the amended complaint were designated as "first," "second," and "third" special defenses and, thus, were not pleaded in accordance with Practice Book § 10-51, which provides in relevant part that "[w]here the complaint . . . is for more than one cause of action, set forth in several counts, each separate matter of defense should be preceded by a designation

of the cause of action which it is designed to meet, in this manner: *First Defense to First Count, Second Defense to First Count, First Defense to Second Count*, and so on. . . .'' (Emphasis in original.)

[14] At oral argument before this court, the defendants' attorney stated that the defendants' trial counsel deleted the special defenses in recognition of Judge Domnarski's prior ruling.

[15] "[T]he law does not require the performance of a futile act." (Internal quotation marks omitted.) *Barber* v. *Jacobs*, 58 Conn. App. 330, 336, 753 A.2d 430, cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000).

[16] It suffices to state that, with respect to the exhaustion of administrative remedies issue, we are not persuaded by the defendants' reliance on *Haussherr-Hughes* v. *Redenz*, Superior Court, judicial district of Danbury, Docket No. CV-98-0332716 S (January 11, 2000) (26 Conn. L. Rptr. 256), which we deem to be factually and procedurally distinguishable from the present case.

[17] The defendants also argued that they would have presented evidence concerning the potential harm to them arising from injunctive relief. We observe that, during his testimony before the trial court, Jeffrey Cashman testified with respect to what actions he took in an attempt to address the zoning violations at issue, why he did not bring an administrative appeal, and how the granting of injunctive relief would impact and harm him.

[18] Our review of the trial transcript reveals that the defendants made an offer of proof on two separate occasions. During argument on the plaintiff's motions in limine, the defendants made an offer of proof with respect to certain police report evidence. The defendants, however, do not appeal from the court's ruling on the plaintiff's motion in limine related to this evidence. Later, during Jeffrey Cashman's examination, the defendants attempted to make an offer of proof with respect to an inspection report that was provided to Jeffrey Cashman by the Department of Agriculture to demonstrate that "what he was doing on his property was within generally accepted agricultural practices."

[19] We note that, although the defendants purport to challenge the court's ruling in excluding evidence pertaining to estoppel, they do not adequately address this issue in their brief, and the record does not contain sufficient facts to warrant any discussion of harm with respect to the exclusion of such evidence.