******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHESTNUT POINT REALTY, LLC *v.* TOWN
OF EAST WINDSOR
(SC 19554)

Rogers, C. J., and Palmer, Eveleigh, Robinson and Mullins, Js.*

*Argued October 18, 2016—officially released January 24, 2017*

*Daniel J. Klau*, with whom, on the brief, was *Jonathan M. Starble*, for the appellant (plaintiff).

*Richard C. Robinson*, with whom were *Laura A. Cardillo* and, on the brief, *Joshua A. Hawks-Ladds*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The statutory right to appeal from an assessment of real property by a municipal board of assessment appeals is conditioned on the property owner "mak[ing] application" to the Superior Court within two months of the date the board mails notice of its action. See General Statutes § 12-117a. The question presented by this case is whether, for purposes of this limitation period, such application is made upon the filing of the required appeal documents in the Superior Court, or rather, when those appeal documents have been served upon the taxing municipality. The plaintiff, Chestnut Point Realty, LLC, appeals from the judgment of the Appellate Court affirming the trial court's dismissal of its municipal tax appeal due to untimeliness.[1] *Chestnut Point Realty, LLC* v. *East Windsor*, 158 Conn. App. 565, 575, 119 A.3d 1229 (2015). The plaintiff claims that, under the plain language of § 12-117a, its appeal was timely commenced upon the filing of its appeal documents in the Superior Court, even though the appeal was not served on the defendant, the town of East Windsor (town), until a date beyond the expiration of the two month appeal period. We disagree and, accordingly, affirm the judgment of the Appellate Court.[2]

The following procedural history is relevant. The plaintiff owns real property in the town. After the property was assessed for purposes of the October 1, 2012 grand list, the plaintiff appealed to the Board of Assessment Appeals of the Town of East Windsor (board) to request a reduction in the property's assessed value. On April 29, 2013, the board denied that request and, on May 1, 2013, the town's assessor mailed notice of the board's decision to the plaintiff.

On June 28, 2013, the plaintiff filed a complaint in the Superior Court alleging that the property had been overvalued. The complaint was accompanied by a citation and recognizance and bore a return date of July 23, 2013. On July 10, 2013, a marshal served the complaint, citation and recognizance on the town. On July 17, 2013, the marshal filed the return of service with the court. On August 14, 2013, the town filed a motion to dismiss the appeal, arguing that the trial court lacked subject matter jurisdiction because the plaintiff did not serve the appeal papers on the town within the two month period allotted by § 12-117a. After a hearing, the court granted the town's motion and dismissed the appeal.

The plaintiff thereafter appealed from the dismissal of its appeal to the Appellate Court. The Appellate Court agreed with the trial court that the appeal was untimely pursuant to § 12-117a because the plaintiff did not serve the town within two months of the date that the board had mailed notice of its decision denying a change to the assessment of the plaintiff's property. Id. In support

of its decision, the Appellate Court relied on the plain language of § 12-117a, case law governing the commencement of a civil action, public policy considerations and a number of consistent holdings of the Superior Court to which, the Appellate Court reasoned, the legislature presumably had acquiesced. Id., 569–74. This appeal followed.

The plaintiff claims that the Appellate Court improperly interpreted § 12-117a to require the dismissal of its appeal as untimely. In the plaintiff's view, § 12-117a clearly and unambiguously provides that an appeal that is filed with the Superior Court within the two month appeal period is timely, even if service of the appeal on the town occurs after the two month period has run. The town, in response, contends that the statute clearly and unambiguously provides that the appeal, to be timely, must be served within two months of the board's notice. We disagree with the parties that the text of § 12-117a clearly and unambiguously answers the question before us. We conclude, after a thorough examination of the relevant interpretive sources, that the town's construction of the statute is the correct one. Accordingly, the Appellate Court properly upheld the dismissal of the plaintiff's appeal as untimely.

We begin with the standard of review and well established general principles. This case presents a question of statutory construction, an issue of law over which we exercise plenary review. *Cales* v. *Office of Victim Services*, 319 Conn. 697, 701, 127 A.3d 154 (2015). In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z. If the text of the statute is not plain and unambiguous, we may consider extratextual sources of information such as the statute's "legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 332, 147 A.3d 104 (2016). Our fundamental objective is to ascertain the legislature's intent. Id.

The right to appeal a municipal property tax assessment, like other administrative appeals, derives from statute. *Atchison* v. *Newtown*, 2 Conn. Supp. 142, 144 (1935) ("[t]he entire subject of appeals from assessment of property for purposes of taxation is statutory in origin"). "[A] statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created . . . including the time periods prescribed in which to appeal." (Citation omitted; internal quotation marks omitted.) *Reardon* v. *Zoning Board of Appeals*, 311 Conn. 356, 366, 87 A.3d 1070 (2014). "Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal."

(Internal quotation marks omitted.) *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council*, 217 Conn. 143, 152, 584 A.2d 1183 (1991). Consequently, a property owner who wishes to challenge an assessment must follow the required procedures within the time period allotted and, if he fails to do so, he forfeits the right to pursue the available statutory remedies. *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 12–15, 730 A.2d 1128 (1999).

We begin by examining the statutory text. Section 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, *within two months* from the date of the mailing of notice of such action, *make application*, in the nature of an appeal therefrom . . . *to the superior court* for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. . . ." (Emphasis added.) In the plaintiff's view, the phrase "make application" is synonymous with the word "file," and, therefore, the statute clearly and unambiguously provides that, to meet the statutory deadline, an aggrieved taxpayer is required only to file its appeal papers with the Superior Court within the two month period. To the town, the statute, by requiring service and return in the same manner as for civil actions, is equally clear and provides, instead, that service on the town must be effected within the two month period. After close examination of the statutory language, we are unable to agree with either party that it is clear and unambiguous.

Simply put, the statute does not provide that an aggrieved party must "file" its application with the court within two months, as it easily could have, and it is not otherwise apparent that the terminology used instead, "make application," is equivalent. Compare, e.g., General Statutes § 4-183 (providing, in subsection [a] that person aggrieved by final decision of administrative agency "may appeal to the Superior Court," and, in subsection [c], that, "within forty-five days" of one of various triggering events, "a person appealing as provided in this section shall . . . [among other requirements] *file the appeal with the clerk of the superior court*" [emphasis added]). Moreover, although § 12-117a indicates that service and return of the appeal should proceed in accordance with the service and return requirements governing civil actions generally, it is silent as to when, in relation to the challenged board decision, the service of process must occur. Compare, e.g., General Statutes (Supp. 2016) § 8-8 (b) (providing that person aggrieved by decision of zoning entity

"may take an appeal to the superior court" and that "[t]he appeal *shall be commenced by service of process . . . within fifteen days* from the date that notice of the decision was published as [statutorily] required" [emphasis added]). Finally, although § 12-117a requires a property owner to "make application" to the court within two months, it does not state explicitly what, exactly, that phrase contemplates. Compare General Statutes § 12-242kk (a) (providing that, "within one hundred eighty days" after receiving condemnation notice and damages assessment, property owner "may make application to the superior court" for review, and that "[s]uch application shall be made by serving a condemnation appeal consisting of [various documents] . . . upon the [Secretary of the Office of Policy and Management] within the time limitation prescribed in this section"). Because the text of § 12-117a is unclear, we turn to an examination of related statutes for guidance.

Title 12 of the General Statutes, governing taxation, is replete with provisions allowing taxpayers to seek review in the Superior Court if they are dissatisfied with various decisions entrusted to taxing authorities or other officials.[3] The structure of these statutes is highly consistent. Each one begins by providing a right to review[4] before a particular judicial tribunal, within a specified time frame following the decision to be reviewed, and requires that the taxpayer include a citation to summon the official or agency to the proceedings. Each statute thereafter proceeds to explain, as does § 12-117a, that the "citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action." In most cases, these various statutes further provide that the appellant is required to provide a prosecution bond or recognizance, and that the appeal will be heard promptly as a preferred case.

We discern from these remarkably similar provisions a legislative intent to achieve uniformity in procedure across all of the various types of tax appeals. It is further suggested, by the consistent incorporation of service and return provisions governing civil actions generally, that the legislature intended tax appeals to be treated, at least as to commencement, similarly to such actions. Nevertheless, the statutes authorizing other types of tax appeals, similar to § 12-117a, are silent in regard to whether it is the filing of the appeal in the Superior Court, or rather, the service of that appeal upon the defendant, that must be accomplished within the statutory appeal period. See footnote 3 of this opinion. Because our examination of these related statutes does not answer the question before us, we conclude that § 12-117a is ambiguous as to what, exactly, is required to occur within two months of the board's decision and, accordingly, we look to extratextual sources for further guidance.

We turn to the geneology of § 12-117a. The statute, in various forms, has existed for well over one century, having first been enacted in 1878. Public Acts 1878, c. XXXII. It has been the subject of frequent amendment, in many cases technical, and reorganization of its various provisions. Several portions of the statute as it exists today appeared, as six separate sections, within the initial public act creating the right to appeal. See Public Acts 1878, c. XXXII, §§ 1 through 6. The provisions at issue are among them. The six sections of the initial public act subsequently were codified, with some rewording and reorganization, into four separate, contiguous statutory sections. See General Statutes (1887 Rev.) §§ 3860 through 3863. Beginning with the 1930 revision of the statutes, these sections were combined again into a single statutory provision with no subsections, similar to § 12-117a as it appears today. See General Statutes (1930 Rev.) § 1200. Despite all of this activity, the portions of the statute at issue, concerning initiation and service of an appeal, have remained largely unchanged in substance over time. We discern, in the various reorganizations of these provisions, with only minor accompanying changes in their wording, no apparent intent to change the essence of what they prescribe. Accordingly, we consider the relevant portions of the statute, as they appeared when originally enacted, illuminative as to their meaning in § 12-117a today.

Chapter XXXII of the 1878 Public Acts provided in relevant part: "Section 1. Whenever any person claims to be aggrieved by the action of the board of relief of any town, he may *make application*, in the nature of an appeal from the doings of such board, *to the superior court* of the county in which such town is situate, upon which application said superior court shall have power to grant such relief as shall to justice and equity appertain.

"Sec. 2. Said application *shall be brought within two months* and not afterward from the time of the action of the board of relief complained of, and shall be accompanied by a citation to said town to appear before said court in the usual form of citations to bills in equity, and shall be served in like manner as such citations to bills in equity are served. . . ."[5] (Emphasis added.)

Examining the statutory language, as it originally was arranged, is illuminating in two respects. First, it is clear that what must occur within the two month limitation period is that the application "be brought . . . ." Public Acts 1878, c. XXXII, § 2. Second, when the foregoing provisions appeared in two separate statutory sections, the requirement that the application be brought within two months was decoupled from the requirement that the appellant "make application . . . to the superior court"; Public Acts 1878, c. XXXII, § 1; thereby breaking any linguistic link between, on the one hand, the act

of the bringing of an appeal within two months, and, on the other, the Superior Court as the locus of that act. This circumstance casts serious doubt on the plaintiff's contention that, to be timely, an application merely must be filed with the court within the prescribed period.

As this court previously has explained, "there is no substantive distinction between the terms 'bringing' an action and 'commencing' an action." *Rocco* v. *Garrison*, 268 Conn. 541, 549, 848 A.2d 352 (2004); see also *Lacasse* v. *Burns*, 214 Conn. 464, 476, 572 A.2d 357 (1990) (terms " 'commence' " and " 'brought' " are used interchangeably to describe initiation of action). Moreover, in Connecticut, it has long, frequently and consistently been held that an action is brought, or commenced, when the writ is served upon the defendant. See *Rocco* v. *Garrison*, supra, 549; see also General Statutes § 52-45a; *Rana* v. *Ritacco*, 236 Conn. 330, 337–38, 672 A.2d 946 (1996); *Hillman* v. *Greenwich*, 217 Conn. 520, 527, 587 A.2d 99 (1991); *Lacasse* v. *Burns*, supra, 475; *McGaffin* v. *Roberts*, 193 Conn. 393, 401 n.9, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Valley Cable Vision, Inc.* v. *Public Utilities Commission*, 175 Conn. 30, 33, 392 A.2d 485 (1978); *Broderick* v. *Jackman*, 167 Conn. 96, 99, 355 A.2d 234 (1974); *Seaboard Burner Corp.* v. *DeLong*, 145 Conn. 300, 303, 141 A.2d 642 (1958); *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.*, 128 Conn. 107, 109, 20 A.2d 621 (1941). Several of this court's decisions so holding predate the enactment of chapter XXXII of 1878 Public Acts by decades. See *Sanford* v. *Dick*, 17 Conn. 213, 215 (1845); *Spalding* v. *Butts*, 6 Conn. 28, 30 (1825); *Jencks* v. *Phelps*, 4 Conn. 149, 152 (1822); *Clark* v. *Helms*, 1 Root (Conn.) 486, 487 (1793). In light of this well developed body of law holding that an action is "brought" or "commenced" upon the service of the writ, we are compelled to conclude that, when the legislature required an application for relief from a board's decision regarding the assessment of property to "be brought within two months" of the challenged action, and that it be accompanied by a citation[6] to be served upon the defendant town in the usual fashion, its intent was that *the service of the citation* be accomplished within the statutory time period. Because the substance of this provision has not changed since its inception, we conclude that the same rule must apply today.

Our conclusion is buttressed by consideration of the policy reasons underlying the limited period of time in which an owner can challenge a municipal board's assessment of his property for tax purposes. "The rationale for this rule is the need on the part of the government for fiscal certainty. A municipality, like any governmental entity, needs to know with reasonable certainty what its tax base is for each fiscal year, so that it responsibly can prepare a budget for that year.

See *Norwich* v. *Lebanon*, 200 Conn. 697, 710, 513 A.2d 77 (1986) (both [General Statutes §§ 12-117a] and 12-119 limit to a short period the time within which the property owner can seek relief under them, and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes . . .) . . . ."[7] (Citation omitted; internal quotation marks omitted.) *Danbury* v. *Dana Investment Corp.*, supra, 249 Conn. 15; see also *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 607, 13 A.2d 462 (1940) ("[s]tatutes . . . fixing a rather brief time in which appeals may be taken to the courts from the orders and decisions of administrative boards are evidently designed to secure in the public interest a speedy determination of the issues involved; and to make it possible to proceed in the matter as soon as the time to take an appeal has passed if one has not been filed").

A rule providing that service of the appeal, rather than the filing of the application in court, must be completed within the two month limitation period most readily advances the goal of resolving tax appeals expeditiously. If, as the plaintiff claims, the two month time limitation applied only to the filing of appeal papers in court, the hearing and resolution of an appeal, at least in some cases, could be subject to additional delay when a taxpayer defers effecting service until after the filing has occurred. The town is correct that the statutes governing service of process and return thereof necessarily limit the time in which an appeal, once it has been filed in court, must be served upon the town. See General Statutes §§ 52-46 through 52-48. Requiring filing alone to be accomplished by the deadline, however, would effectively extend that deadline by several weeks, creating uncertainty and extra burdens for municipalities. Specifically, instead of a municipality knowing, definitively, at the end of the two month period whether an appeal is being pursued because it has or has not been served, the municipality would have to wait for some indeterminate time beyond the deadline to be sure, or attempt to discern whether an appeal has been filed by accessing court records. Although the plaintiff attempts to minimize the level of inconvenience that a holding in its favor would engender, the existence, as we have noted, of dozens of tax appeal provisions structured identically to § 12-117a; see footnote 3 of this opinion; suggests otherwise.

Our interpretation of § 12-117a promotes consistency between tax appeals and other types of administrative appeals, a desirable end in itself. See General Statutes § 4-183 (c) (requiring filing *and service* of appeals under Uniform Administrative Procedure Act within forty-five days); General Statutes § 8-8 (b) (requiring service of zoning appeals within fifteen days). It further creates consistency between tax appeals and other types of civil actions, which, from the language used in § 12-117a and other tax appeal provisions, appears to have

been the legislature's intent.[8] Finally, our decision today confirms the correctness of a large number of trial court opinions considering the issue and holding, without exception, that municipal tax appeals are commenced by service of process on the municipality.[9] To the extent the plaintiff contends that ambiguity in the statute affected its ability to pursue its appeal in a timely fashion, its argument is refuted by the existence of these decisions and the ample clarification that they provided. In sum, because the plaintiff failed to serve its appeal on the town within the two month limitation period provided for in § 12-117a, the trial court properly dismissed it as untimely, and the Appellate Court properly affirmed that dismissal.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh and Robinson, and Judge Mullins. Although Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] We granted the plaintiff's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the plaintiff's property tax appeal was not timely commenced under . . . § 12-117a?" *Chestnut Point Realty, LLC* v. *East Windsor*, 319 Conn. 928, 125 A.3d 203 (2015).

[2] The plaintiff argues, in the alternative, that even if this court concludes that a municipal tax appeal is commenced for purposes of the limitations period when it is served on the taxing municipality, the statutorily mandated notice of the decision of the Board of Assessment Appeals of the Town of East Windsor (board); see General Statutes § 12-111 (a); was legally defective and, therefore, should preclude dismissal of the plaintiff's appeal on untimeliness grounds. Specifically, that notice incorrectly advised the plaintiff that appeals from that board "are to be *filed* with the Superior Court within two . . . months of the [b]oard's action." (Emphasis added.) In the plaintiff's view, defective notice amounts to no notice at all, such that the statutory limitation period is yet to begin running. See, e.g., *Trap Falls Realty Holding Ltd. Partnership* v. *Board of Tax Review*, 29 Conn. App. 97, 104, 612 A.2d 814 (when board of tax review sent notice to taxpayer at address of subject property, instead of to taxpayer's duly appointed agent at his specified business address, running of limitation period was not triggered), cert. denied, 224 Conn. 911, 617 A.2d 170 (1992).

We reject this claim for multiple reasons. First, it was argued for the first time in the plaintiff's reply brief, depriving the town of a full opportunity to respond to it. See *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009). Second, it was not raised in the proceedings before the trial court and, to the extent it invokes principles of estoppel, it depends on factual findings that this court is not competent to make, in particular, that the plaintiff actually relied on the misleading notice rather than its own interpretation of § 12-117a. See *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699, 590 A.2d 957 (1991). Finally, *Trap Falls Realty Holding Ltd. Partnership* v. *Board of Tax Review*, supra, 29 Conn. App. 97, on which the plaintiff relies, is distinguishable on its facts. In that case, due to the completely misdirected notice, neither the plaintiffs nor their agent were aware of the board of tax review's decision until there were only three days left in the period in which to appeal. *Trap Falls Realty Holding Ltd. Partnership* v. *Board of Tax Review*, Superior Court, judicial district of Fairfield, Docket No. CV-91-02830391-S (November 21, 1991) (5 Conn. L. Rptr. 212, 212–13). Here, there is no indication that the inaccuracy in the board's notice had any effect on the plaintiff's ability to commence its appeal by the statutory deadline.

[3] See General Statutes § 12-3a (d) (review of decisions of Penalty Review Committee); General Statutes § 12-30 (review of refusal of Commissioner of Revenue Services [commissioner] to waive penalty for late filing); General

Statutes § 12-33 (review of commissioner's actions re towns and companies); General Statutes § 12-120b (d) (3) (review of actions by Secretary of Office of Policy and Management re state assistance with property tax); General Statutes § 12-208 (b) (review of commissioner's actions re insurance companies and health-care centers taxes); General Statutes § 12-268*l* (review of commissioner's actions re public service companies tax); General Statutes § 12-237 (review of commissioner's actions re corporation business tax); General Statutes § 12-312 (review of commissioner's actions re cigarette taxes); General Statutes § 12-330m (review of commissioner's actions re tobacco products tax); General Statutes § 12-405k (d) (review of commissioner's actions re estate tax); General Statutes § 12-422 (review of commissioner's actions re sales and use taxes); General Statutes § 12-448 (review of commissioner's actions re alcoholic beverages tax); General Statutes § 12-463 (review of commissioner's actions re motor vehicle fuels tax); General Statutes § 12-489 (b) (review of commissioner's actions re motor carrier road tax); General Statutes § 12-522 (review of commissioner's actions re dividends, interest income and capital gains tax); General Statutes § 12-554 (review of commissioner's actions re admissions and dues tax); General Statutes § 12-582 (review of commissioner's actions re municipal admissions tax); General Statutes § 12-597 (review of commissioner's actions re sale of petroleum products gross earnings tax); General Statutes § 12-638i (b) (review of commissioner's actions re controlling interest transfer tax); General Statutes § 12-730 (review of commissioner's actions re income tax).

[4] In creating the right to seek review, within a specified time period, the legislature has used somewhat varying terminology. At times, it states that the taxpayer, within the particular time allotted, may "appeal" from the challenged decision to the Superior Court. See, e.g., General Statutes § 12-3a (d). Other times, the taxpayer is required, within a specified period, to "take an appeal . . . to the superior court"; see, e.g., General Statutes § 12-489 (b); or, as with § 12-117a, to "make application in the nature of an appeal . . . to the superior court . . . ." See, e.g., General Statutes § 12-405k. We view these terms as equivalent. Cf. *Underwood Typewriter Co.* v. *Chamberlain*, 92 Conn. 199, 206, 102 A. 600 (1917) (terms "[a]ppeal," "apply for relief" and "application for relief" are "used in the statutes in the same sense and for the same purpose" [internal quotation marks omitted]).

[5] In the next subsequent revision, the statute was amended to require, as it does today, that the accompanying citation be "returnable at the same time and served and returned in the same manner as is required in case of a summons *in a civil action*." (Emphasis added.) General Statutes (1887 Rev.) § 3860. This was in response to the Practice Act of 1879, which created a single form of civil action and merged proceedings in law and equity. See Practice Act of 1879, §§ 1, 6, pp. 1–2, 3; see also *United States Envelope Co.* v. *Vernon*, 72 Conn. 329, 334, 44 A. 478 (1899) (by time of 1887 revision of § 3860, "the bill in equity had become merged in the complaint of the [P]ractice [A]ct [of 1879] [and] the citation was made to conform to the summons in a civil action, but the form of the [tax appeal] proceeding was not otherwise changed").

[6] "In appeals from administrative agencies, the writ is properly designated as a citation though it serves the same function." *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102, 104 n.1, 347 A.2d 53 (1974); see 1 R. Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 13 (a), p. 23 (same).

[7] Notably, § 12-119 differs from § 12-117a, and other tax appeal provisions, in providing for a substantially longer limitations period, specifically, one year. The distinct purview of the two provisions, which we have explained on multiple prior occasions, is illuminative of the different time periods allotted. Section 12-117a permits property owners to challenge the valuation placed on their property by municipal assessors. See *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339, 597 A.2d 326 (1991). In contrast, § 12-119 may be invoked by an owner to claim that a municipality "had no authority to tax the subject property, or that the assessment was manifestly excessive *and* could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 339–40. In other words, the assessment at issue is not merely inaccurate, it is illegal. See id., 340–42. In the case of illegal assessments, the legislature apparently viewed a taxpayer's opportunity to obtain relief as important enough to defer, for a longer period of time, a municipality's ability to achieve fiscal certainty.

[8] Indeed, as the Appellate Court reasoned, a tax appeal, like other adminis-

trative appeals, *is* a type of civil action. *Chestnut Point Realty, LLC* v. *East Windsor*, supra, 158 Conn. App. 570; see Practice Book §§ 14-5 and 14-6; see also *Cales* v. *Office of Victim Services*, supra, 319 Conn. 705.

[9] *Patel* v. *New Haven*, Superior Court, judicial district of New Haven, Docket No. CV-07-4027806 (September 8, 2010); *Collins* v. *Fairfield*, Superior Court, judicial district of Fairfield, Docket No. CV-0332901-S (August 26, 1996); *Appletree* v. *Board of Review*, Superior Court, judicial district of Hartford, Docket No. CV-950551837-S (March 1, 1996) (16 Conn. L. Rptr. 323, 324); *Greenwich New Englander Motor Motel Associates, L.P.* v. *Greenwich*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-94-0139502-S (April 7, 1995); *Integrated Systems* v. *Southbury*, Superior Court, judicial district of Waterbury, Docket No. 120368 (January 3, 1995) (13 Conn. L. Rptr. 256, 257); *Cooper* v. *Board of Tax Review*, Superior Court, judicial district of Fairfield, Docket No. CV-94-313781-S (August 18, 1994), aff'd, 37 Conn. App. 914, 655 A.2d 818, cert. denied, 233 Conn. 916, 659 A.2d 185 (1995); *Mazur* v. *Colchester*, Superior Court, judicial district of New London, Docket No. 519380 (January 11, 1993); *Cohen* v. *Morris*, Superior Court, judicial district of Litchfield, Docket No. 0059778 (August 18, 1992); *Greaves* v. *Morris*, Superior Court, judicial district of Litchfield, Docket No. 0059622 (August 18, 1992); *Paletsky* v. *Morris*, Superior Court, judicial district of Litchfield, Docket No. 059623 (August 18, 1992); *Trap Falls Realty Holding Ltd. Partnership* v. *Board of Tax Review*, Superior Court, judicial district of Fairfield, Docket No. CV-91-0283039-S (November 21, 1991) (5 Conn. L. Rptr. 212, 212–13), rev'd on other grounds, 29 Conn. App. 97, 612 A.2d 814, cert. denied, 224 Conn. 911, 617 A.2d 170 (1992); *Allen* v. *Goshen*, Superior Court, judicial district of Litchfield, Docket No. 0056241 (October 24, 1991) (5 Conn. L. Rptr. 618, 619); *Hall* v. *Goshen*, Superior Court, judicial district of Litchfield, Docket No. 0056240 (October 24, 1991) (5 Conn. L. Rptr. 614, 615); *Robbins* v. *Goshen*, Superior Court, judicial district of Litchfield, Docket No. 056243 (October 24, 1991) (5 Conn. L. Rptr. 171); *Moss* v. *Goshen*, Superior Court, judicial district of Litchfield, Docket No. 0056242 (October 24, 1991); *Perse* v. *Board of Tax Review*, Superior Court, judicial district of Litchfield, Docket No. 056923 (October 24, 1991); *Gregerson* v. *Wilton*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-89-0100691 (December 18, 1989) (5 C.S.C.R. 119, 120).

We agree with the plaintiff that, contrary to the reasoning of the Appellate Court; *Chestnut Point Realty, LLC* v. *East Windsor*, supra, 158 Conn. App. 573; the doctrine of legislative acquiescence typically does not apply in the case of unofficially reported trial court decisions. See *Butts* v. *Bysiewicz*, 298 Conn. 665, 685–86, 5 A.3d 932 (2010). Our research, however, has disclosed at least one officially published decision holding that a tax appeal is commenced by service of process. See *Power* v. *Old Saybrook*, 12 Conn. Supp. 382, 386 (1944).

———————————————