******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## SUSANNE P. WAHBA *v.* JPMORGAN CHASE BANK, N.A.
## (AC 42389)

Lavine, Alvord and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant bank for violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) that she alleged occurred in its handling of the modification process with respect to her mortgage. The plaintiff had obtained a mortgage loan from W Co. that was secured by certain real property. The plaintiff and W Co. thereafter engaged in discussions regarding a mortgage modification and eventually reached an agreement. A few days prior to the consummation of the modification agreement, W Co.'s assets, including the plaintiff's existing loan, were acquired by the defendant after W Co. was deemed a failed financial institution and was taken over by the Federal Deposit Insurance Corporation. The plaintiff continued to submit applications for various loan modifications or programs but failed to obtain new loan terms until several years later, when the plaintiff and the defendant executed a new loan agreement. The plaintiff commenced the present action alleging that the defendant engaged in deceptive and unfair trade practices with respect to the loan modification process and the defendant filed a counterclaim, seeking to foreclose on the mortgage. After a jury trial, the jury found in favor of the defendant on the plaintiff's CUTPA claim. After a bench trial on the counterclaim, the court found in favor of the defendant and rendered a judgment of strict foreclosure. From the judgment, the plaintiff appealed to this court. *Held*:

1. This court declined to review the plaintiff's claim of error as to the trial court's judgment of strict foreclosure, the plaintiff having failed to adequately brief that claim; the plaintiff's briefs contained no citation to any evidentiary rulings made within the bench trial on the defendant's foreclosure counterclaim that the plaintiff claims were in error and, therefore, any claim that the judgment of strict foreclosure was made in error was deemed abandoned.

2. The plaintiff's claim that the trial court improperly granted the defendant's motion in limine to preclude evidence of W Co.'s conduct pertaining to the 2008 modification agreement was dismissed as moot, the plaintiff having failed to challenge both of the court's independent bases for its evidentiary ruling; the court granted the motion in limine because W Co.'s conduct was not pleaded in the plaintiff's complaint and because the defendant could not be held liable for W Co.'s purported conduct without the plaintiff first having exhausted her administrative remedies pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) but, on appeal, the plaintiff challenged only the court's interpretation and application of FIRREA and, therefore, this court could grant no practical relief to the plaintiff.

3. The trial court did not abuse its discretion in granting the defendant's motion in limine to preclude evidence of a consent order between the defendant and the federal government on the basis that it was not relevant to the pleadings: the consent order made no reference to the plaintiff or her mortgage loan and the plaintiff did not allege in her pleadings the activity of the defendant that the government had identified as being improper; moreover, because the plaintiff failed to adequately brief how the preclusion of two other documents was harmful, this court declined to consider the plaintiff's claim of error as to the court's evidentiary ruling regarding these two documents.

4. The trial court did not abuse its discretion in denying the plaintiff's request to amend her complaint; the request to amend was filed the morning that the jury trial was to begin and the court noted its concern that allowing the amendment would cause an undue delay of the trial due it its substantial changes to the pleadings.

Argued February 10—officially released October 20, 2020

Action to recover damages for violations of the Connecticut Unfair Trade Practices Act, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a counterclaim seeking to foreclose a mortgage on certain real property owned by the plaintiff; thereafter, the court, *Povodator, J.*, granted the defendant's motions in limine to preclude certain evidence and denied the plaintiff's request to amend her complaint; subsequently, the plaintiff's claim was tried to the jury before *Povodator, J.*; verdict for the defendant; thereafter, the defendant's counterclaim was tried to the court, *Povodator, J.*; judgment for the defendant on the complaint and on the counterclaim, from which the plaintiff appealed to this court. *Appeal dismissed in part; affirmed.*

*Thomas P. Willcutts*, for the appellant (plaintiff).

*Brian D. Rich*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Susanne P. Wahba, appeals from the judgment of the trial court rendered in favor of the defendant, JPMorgan Chase Bank, N.A., after a jury trial on the plaintiff's complaint and a court trial on the defendant's counterclaim.[1] On appeal, the plaintiff claims that the court improperly (1) granted the defendant's March 15, 2017 motion in limine precluding evidence regarding a 2008 modification agreement (March 15 motion in limine), (2) granted the defendant's March 16, 2017 motion in limine precluding evidence regarding government regulatory action taken against the defendant (March 16 motion in limine), and (3) denied the plaintiff's request to amend her complaint. We dismiss the plaintiff's first claim as moot because the plaintiff has not challenged both of the trial court's bases for its evidentiary ruling. With regard to the plaintiff's remaining claims, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In the 1970s, the plaintiff and her husband purchased property located at 111 Byram Shore Road, Greenwich, which has been subject to different mortgages over the years.[2] Prior to any involvement by the defendant, the plaintiff had most recently obtained a mortgage loan from Washington Mutual (WaMu) in 2003.

In 2008, immediately before WaMu was determined to be a failed financial institution and was taken over by the Federal Deposit Insurance Corporation (FDIC), there had been discussions between the plaintiff and WaMu and an application for a new loan arrangement with WaMu. On September 25, 2008, the defendant acquired the assets of WaMu from the FDIC, including the existing loan to the plaintiff. On September 29, 2008, within four days of the defendant's acquisition of the plaintiff's mortgage, the plaintiff and the defendant consummated a modification agreement (2008 modification agreement), which, inter alia, raised the fixed interest rate of the existing WaMu note.

Following the execution of the 2008 modification agreement, the plaintiff submitted to the defendant three applications for various loan modifications or programs between 2008 and 2012, seeking more advantageous terms for her mortgage loan. She failed to obtain approval of new loan terms until August 29, 2012, when the plaintiff and the defendant executed the currently operative loan agreement.

The plaintiff commenced this action in September, 2013, alleging that the defendant engaged in deceptive and unfair trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq.[3] The plaintiff's CUTPA claim against the defendant was tried to the jury in March,

2017. At trial, the plaintiff presented two arguments in support of her claim. First, the plaintiff argued that the defendant modified the WaMu note, pursuant to the terms of the 2008 modification agreement, knowing that the plaintiff had been induced to sign the agreement on the basis of false and deceptive representations, namely, that the 2008 modification agreement was a necessary precondition for the plaintiff to qualify for more favorable mortgage modification terms. Second, the plaintiff argued that the defendant engaged in a deceptive mortgage modification scheme that was designed to purposefully extend the modification process without any intention of finalizing a favorable modification agreement. The jury returned a verdict for the defendant, finding that the plaintiff failed to prove that the defendant violated CUTPA.

This appeal stems from the court's rulings on several motions filed on the eve of trial.[4] On appeal, the plaintiff challenges the court's rulings on (1) the defendant's March 15 motion in limine seeking to preclude evidence regarding the conduct of WaMu pertaining to the 2008 modification agreement, (2) the defendant's March 16 motion in limine seeking to preclude evidence regarding government regulatory action taken against the defendant, and (3) the plaintiff's March 16, 2017 request to amend her complaint seeking to include allegations concerning the conduct of WaMu pertaining to the 2008 modification agreement. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff's first claim on appeal is that the court improperly granted the defendant's March 15 motion in limine precluding evidence of WaMu's conduct pertaining to the 2008 modification agreement.[5] We conclude that this claim is moot because the plaintiff has not challenged both of the trial court's bases for its evidentiary ruling.

Our review of the record indicates that the court granted the defendant's March 15 motion in limine on two independent bases: (1) WaMu's conduct pertaining to the 2008 modification agreement was not pleaded in the plaintiff's complaint; and (2) WaMu's conduct was not relevant because, under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821 (d) (2018), the defendant cannot be held liable for the purported conduct of WaMu without the plaintiff first exhausting her administrative remedies.[6] The defendant's March 15 motion in limine was argued before the court on March 16 and 17, 2017. On March 17, 2017, the court stated its concerns with admitting the evidence of WaMu's conduct pertaining to the 2008 modification agreement as follows: "Aside from the fact that none of this is in the [c]omplaint . . . I also have a problem . . . about FIRREA . . . having a requirement that before you can assert a claim

against a successor, whether it's the FDIC or the bank that takes over, you need to go through the administrative process." Ultimately, the court found that "[t]here [was] nothing [alleged] in the complaint that suggested anything about antecedent conduct during the life of WaMu" and, accordingly, precluded evidence of the plaintiff's discussions with WaMu preliminary to the 2008 modification agreement.

"Where an appellant fails to challenge all bases for a trial court's adverse ruling on [her] claim, even if this court were to agree with the appellant on the issues that [she] does raise, we still would not be able to provide [her] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citation omitted; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017).

On appeal, the plaintiff argues only that the court's interpretation and application of FIRREA in granting the defendant's March 15 motion in limine was in error.[7] The plaintiff does not challenge the trial court's exclusion of evidence on the basis that it was not pleaded in the complaint.[8] Because the plaintiff on appeal has not challenged one of the two independent bases for the trial court's exclusion of the evidence, even if this court were to conclude that the trial court improperly applied FIRREA, we can grant no practical relief to the plaintiff. See *State* v. *Lester*, supra, 324 Conn. 528. Accordingly, we conclude that the plaintiff's claim is moot and this court lacks subject matter jurisdiction to consider it.

## II

The plaintiff's second claim on appeal is that the court improperly granted the defendant's March 16 motion in limine precluding evidence regarding government regulatory action taken against the defendant. The plaintiff argues that such evidence was improperly precluded because it is relevant to the defendant's decision to approve the plaintiff's requested loan modification in August, 2012.[9] The defendant contends that the court properly precluded the evidence because it lacks relevance to the plaintiff's specific claims, would cause undue prejudice to the defendant, and lacks any probative value relative to the claims or defenses in this case. We agree with the defendant that the court properly granted its March 16 motion in limine.

The following additional facts and procedural history are relevant to this claim. After the 2008 modification agreement and until 2012, the plaintiff submitted to the defendant three unsuccessful applications for various modifications or programs, seeking more advantageous terms for her mortgage loan. On the first occasion, the

defendant told the plaintiff that her income was too high to qualify for a program to which she had applied. On the second occasion, substantially later in time, the defendant told the plaintiff that her income was too low to qualify. On the third occasion, "senior management" initially instructed that the plaintiff's application be denied and, several months later, the plaintiff's mortgage loan had been referred out to pursue foreclosure proceedings. However, the defendant ultimately approved the plaintiff's request for a modification in August, 2012 "per management." On August 29, 2012, the plaintiff and the defendant executed the currently operative loan agreement.

At trial, the plaintiff included on her exhibit list an April 13, 2011 consent order (consent order) between the defendant and the United States Department of the Treasury, Office of the Comptroller of the Currency, under which the defendant "committed to taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the [Office of the Comptroller of the Currency], and to enhance the [defendant's] residential mortgage servicing and foreclosure processes." One such step, the foreclosure review, required the defendant to "retain an independent consultant . . . to conduct an independent review of certain residential foreclosure actions regarding individual borrowers with respect to the [defendant's] mortgage servicing portfolio . . . includ-[ing] residential foreclosure actions or proceedings . . . for loans serviced by the [defendant] . . . that have been pending at any time from January 1, 2009 to December 31, 2010 . . . ." Among other things, the independent consultant was charged with determining "whether any errors, misrepresentations, or other deficiencies identified in the [f]oreclosure [r]eview resulted in financial injury to the borrower," which would require the defendant to submit "a plan, acceptable to the [Office of the Comptroller of the Currency] to remediate all financial injury to borrowers caused by any errors, misrepresentations or other deficiencies identified . . . ."[10]

On March 16, 2017, the defendant filed a motion in limine seeking to preclude the plaintiff from offering into evidence three documents: (1) the consent order, (2) an FDIC press release, and (3) a printout of a website posting from the Department of the Treasury relating to the Troubled Asset Relief Program, as well as any other similar document or testimony relating to government regulatory action taken against the defendant. On March 17, 2017, the court heard oral argument on the defendant's March 16 motion in limine. The court found that, so far as the plaintiff stated in her argument, such evidence was not relevant to the plaintiff's claims. The court granted the defendant's March 16 motion in limine without prejudice to the plaintiff seeking review of that ruling as the evidence was presented at trial.

We first set forth our standard of review. "A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. . . . [T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 377–78, 28 A.3d 272 (2011).

"[E]vidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . The proffering party bears the burden of establishing [relevance]." (Citation omitted; internal quotation marks omitted.) Id., 378.

Before turning to the plaintiff's arguments, we note that in her appellate brief the plaintiff claims harmful error only as to the court's preclusion of the consent order and the related communications pertaining to the foreclosure review. The plaintiff's brief does not adequately set forth an analysis of how the court's preclusion of evidence of the two other documents, an FDIC press release or a printout of a website posting from the Department of the Treasury, affected the final result of the proceeding. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis

of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Lane* v. *Cashman*, 179 Conn. App. 394, 435, 180 A.3d 13 (2018). Faced with the plaintiff's failure to adequately brief how the court's exclusion of evidence of an FDIC press release or a printout of a website posting from the Department of the Treasury was harmful, we therefore decline to consider the plaintiff's claim of error related to the challenged evidentiary ruling. See *Lane* v. *Cashman*, supra, 435. Accordingly, we only consider the plaintiff's claim as to the court's ruling on the consent order.

By its terms, the consent order made no reference to the plaintiff or to her mortgage loan. During oral argument on the defendant's March 16 motion in limine, the court noted that regardless of whether the Office of the Comptroller of the Currency identified some deficiencies in the defendant's loan servicing at large, it bears no relevance to whether there were any such deficiencies in the defendant's servicing of the plaintiff's mortgage loan. Although the plaintiff had applied, on the basis of the status of her mortgage loan and the defendant's handling of the same, to collect on any deficiencies identified by the Office of the Comptroller of the Currency during the foreclosure review process, the plaintiff was not notified of her eligibility and in receipt of compensation until April 26, 2013—approximately eight months after the plaintiff and the defendant executed the currently operative loan agreement in August, 2012. Furthermore, the court found that the plaintiff did not allege in her pleadings the significant activity that the Department of the Treasury identified as being improper, namely, that the defendant deviated from loan documents. "What is in issue is determined by the pleadings and, once they have been filed, the evidence proffered must be relevant to the issues raised in the pleadings." (Internal quotation marks omitted.) *KMK Insulation, Inc.* v. *A. Prete & Son Construction Co.*, 49 Conn. App. 522, 527–28, 715 A.2d 799 (1998). The court properly precluded the consent order on the basis that it was not relevant to the pleadings. We therefore find no abuse of discretion in the court's ruling granting the defendant's March 16 motion in limine.

### III

The plaintiff's third claim on appeal is that the court improperly denied the plaintiff's request to amend her complaint, which sought to include allegations concerning WaMu's conduct pertaining to the 2008 modification agreement. Specifically, the plaintiff argues that, because it was apparent to the defendant that at least a portion of the plaintiff's claim rested on WaMu's conduct pertaining to the foundation of the 2008 modification agreement, the requested amendment did not unfairly prejudice the defendant and, therefore, the

court improperly denied her request to amend. The defendant responds that the court properly denied the plaintiff's request to amend as the amendment sought to include new allegations relating to the 2008 modification agreement at a belated stage of trial. We agree with the defendant that the court properly denied the plaintiff's request to amend her complaint.

The following additional facts and procedural history are relevant to this claim. On the morning of March 16, 2017, after jury selection had been completed and immediately prior to anticipated opening statements and the presentation of evidence, the plaintiff filed a request to amend her complaint. On that morning, the court heard oral argument on the request. The plaintiff's requested amendment sought to include, inter alia, allegations concerning the communications leading up to the 2008 modification agreement. Specifically, the plaintiff's requested amendment alleged that "the plaintiff contacted [WaMu] . . . concerning a possible modification of the mortgage . . . . Said communications continued with [the defendant] upon its acquiring [WaMu]."[11]

During oral argument on the request to amend, the plaintiff argued that "the evidence would be . . . that essentially the same [WaMu employees] who would have made representations leading up to the execution of that [2008 modification agreement] in favor of [the defendant] were the people who . . . then became [the defendant's] employees and continued to be involved in the execution of that agreement." The plaintiff further maintained that "given the facts that lead up to the signing of that agreement, I think, the elements are there to have a duty to speak. I think, fraudulent nondisclosure kicks in when a person makes a representation that they know is not true and they know is being relied upon." The court characterized the plaintiff's amendment as including "substantial changes" to the pleadings, articulating a concern for the already selected jury and a delay of trial. Due, in part, to the court's need to hear additional argument on the plaintiff's request to amend, the court delayed the start of trial until the next morning, March 17, 2017.

On March 17, 2017, the court denied the plaintiff's amendment insofar as it concerned the plaintiff's communications with WaMu leading up to the 2008 modification agreement. In so doing, the court stated: "We have to get this going. The case is going to start. . . . The [defendant's] objection is sustained to the [plaintiff's] amendment. We are dealing with a situation where we are talking about misrepresentations made by [the defendant] concerning . . . the [2008 modification agreement]." "This is what the complaint was and is . . . staying as."

We first set forth our standard of review. "Our standard of review of the [plaintiff's] claim is well defined.

A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Billy & Leo*, *LLC* v. *Michaelidis*, 87 Conn. App. 710, 714, 867 A.2d 119 (2005).

During oral argument on the plaintiff's request to amend her complaint, the court noted its concern for an undue delay of trial in light of the "substantial changes" to the pleadings and the defendant's argument that the amendment contained wholly new allegations that would require additional preparation. Although the plaintiff contends that the defendant was on notice of the new allegations because of evidence brought out in discovery, the defendant was not on notice that such information would be allowed at trial. See *Billy & Leo*, *LLC* v. *Michaelidis*, supra, 87 Conn. App. 715. "[T]he plaintiff filed the motion to amend only a day or two before the trial was to commence, and such a late amendment would have prejudiced the defendant in his case. We can find no reason to conclude that the court abused its discretion in making that ruling." Id., 715–16; see *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 303, 460 A.2d 488 (1983) (trial court did not abuse its discretion by denying request to amend that was filed day before trial and would have added new bases of liability); see also *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 549, 606 A.2d 684 (1992) ("[w]e have not previously found an abuse of discretion when a trial court, on the eve of trial, concluded that prejudice and delay would result from a substantial amendment to the [pleadings], and we decline to do so in the present circumstances" (internal quotation marks omitted)). Accordingly, we conclude that the court did not abuse its discretion in denying the plaintiff's request to amend her complaint.

The appeal is dismissed with respect to the defendant's March 15, 2017 motion in limine; the judgment is affirmed and the case is remanded solely for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] The court conducted two trials in this matter and rendered judgment in favor of the defendant; a jury trial was held in March, 2017 as to the plaintiff's claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and a court trial was held in October, 2017 as to the defendant's counterclaim seeking foreclosure. In the concluding sentence of the plaintiff's principal appellate brief, the plaintiff maintains that "both the jury's verdict [on her complaint] and the court's judgment on the defendant's counterclaim, which was substantially linked to the jury's verdict, should be set aside and the case remanded for a new trial." The defendant contends that the plaintiff has failed to brief any claim of error with respect to the court's judgment of strict foreclosure. We agree with the defendant and, accordingly, consider only the plaintiff's claims of error as to the court's judgment with respect to her CUTPA claim.

"It is well settled that claims on appeal must be adequately briefed . . . . Claims that are inadequately briefed generally are considered abandoned." (Citations omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). The plaintiff's briefs are limited to challenging the trial court's orders granting the defendant's motions in limine and denying the plaintiff's request to amend her complaint, which orders were issued only in connection with the jury trial. Although the court considered the evidence admitted during the jury trial and took guidance from the jury's verdict in adjudicating the defendant's counterclaim seeking foreclosure, the court did not accept the jury's verdict as determinative of the plaintiff's equitable defenses in the court trial. Furthermore, the court expressly allowed the plaintiff to offer additional evidence during the court trial on the defendant's counterclaim, recognizing that considerations regarding the admissibility of evidence excluded for the purposes of the jury trial might have been different during the court trial. Because the plaintiff provides no citation to any evidentiary ruling made within the foreclosure trial that she contends was in error, the plaintiff's claim of error as to the trial court's judgment of strict foreclosure has been inadequately briefed and, therefore, abandoned.

[2] The plaintiff's husband, Mahmoud Wahba, at times was a joint owner of the property, but not during a time relevant to this appeal. In the defendant's counterclaim of strict foreclosure, the following third parties were identified as junior lienholders on the subject property and named as counterclaim defendants: Mortgage Electronic Registration Systems, Inc.; Bridge Funding, Inc.; Dr. Magdy A. Wahba; American Express Centurion Bank; and Midland Funding, LLC. On May 24, 2016, Dr. Magdy A. Wahba filed an appearance. On May 26, 2016, the court granted the defendant's motion for default for failure to appear against Mortgage Electronic Registration Systems, Inc., American Express Centurion Bank, and Midland Funding, LLC. On June 7, 2016, the court granted the defendant's motion for default for failure to appear against Bridge Funding, Inc. On February 7, 2017, the court granted the defendant's motion for default for failure to disclose defense against Dr. Magdy A. Wahba. None of those rulings is challenged on appeal. Accordingly, none of the aforementioned counterclaim defendants is a participating party in this appeal.

[3] In count two of the plaintiff's complaint, she also sought to have the court quiet title to the property, but the court entered summary judgment in favor of the defendant on that count. The plaintiff does not challenge that decision on appeal.

[4] The parties filed the motions after jury selection had been completed. The jury trial on the plaintiff's CUTPA claim was scheduled to begin on March 16, 2017. On that morning, the court heard oral argument on the motions immediately prior to the scheduled start of trial. Due, in part, to the court's need to hear additional argument on the parties' motions, the court delayed the start of trial until the next morning, March 17, 2017.

[5] The defendant's March 15 motion in limine sought to preclude evidence of the foundation of the 2008 modification agreement, namely, negotiations by and between the plaintiff and WaMu.

[6] "FIRREA provides an administrative review process for all claims asserted against assets of a failed institution. . . . The administrative review process provided by FIRREA is a prerequisite to judicial review." *Aber-Shukofsky* v. *JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445 (E.D.N.Y. 2010).

Title 12 of the United States Code, § 1821 (d) (13) (D), provides: "Except as otherwise provided in this subsection, no court shall have jurisdiction over—

"(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

"(ii) *any claim relating to any act or omission of such institution* or the Corporation as receiver." (Emphasis added.)

"Given FIRREA's clear language, the Second Circuit has consistently held that courts lack subject matter jurisdiction to hear a claim against a failed bank taken into receivership by the FDIC unless the plaintiff has exhausted the administrative claims process." *Aber-Shukofsky* v. *JPMorgan Chase & Co.*, supra, 446.

[7] In her principal appellate brief, the plaintiff also suggested that the defendant employed "trial by ambush" tactics in timing its March 15 motion in limine and injecting FIRREA into the case. The plaintiff expressly abandoned that claim at oral argument before this court. Therefore, we do not consider that claim. See *Cunningham* v. *Commissioner of Correction*, 195 Conn. App. 63, 65 n.1, 223 A.3d 85 (2019), cert. denied, 334 Conn. 920, 222 A.3d 514 (2020).

[8] In her brief, the plaintiff contends that the defendant's March 15 motion in limine did not argue that evidence concerning WaMu should be precluded because it was not properly within the scope of the allegations of the plaintiff's complaint and only sought to preclude such evidence on the basis of FIRREA. The plaintiff states that, in light of the arguments or lack thereof presented in the defendant's March 15 motion in limine, it is her understanding and position that the WaMu evidence was precluded on the sole basis of FIRREA. The record reveals that the plaintiff's understanding and position is incorrect. First, during oral argument on the March 15 motion in limine, the defendant objected to the plaintiff offering evidence of the plaintiff's discussions with WaMu predating the 2008 modification agreement on the ground that such evidence was not within the allegations of the plaintiff's complaint. Second, the court expressly stated in its ruling that "[t]here [was] nothing [alleged] in the [plaintiff's] complaint that suggested anything about antecedent conduct during the life of WaMu."

[9] In her objection to the defendant's March 16 motion in limine, the plaintiff also argued that such evidence is relevant to "the public policy that was adopted by our government in the aftermath of the banking/mortgage crisis of 2008 and whether or not the defendant engaged in conduct that was . . . violative of the public policy considerations attaching to the parties' dealings." At trial, however, the court provided a charge to the jury on public policy as follows: "With respect to mortgage modifications specifically, public policy requires a mortgage servicer to treat a borrower fairly during the course of the modification process. Further during this period of time, there was an evolving policy encouraging solutions to homeowner mortgage problems that did not require foreclosure." The plaintiff does not challenge the propriety of this charge on appeal.

[10] In 2013, the defendant entered into an agreement with the Office of Comptroller of the Currency and the Board of Governors of the Federal Reserve System, resolving the foreclosure review required by regulators. Thereafter, the plaintiff was notified that she was eligible to receive a payment as a result of that agreement. By letter dated April 26, 2013, the plaintiff received a payment of $500, an amount determined by regulators "based on the stage of [the plaintiff's] foreclosure process and other considerations related to [her] foreclosure."

[11] The plaintiff's original complaint alleged: "After the plaintiff skipped three months of payments on her mortgage, as instructed by [the defendant] in order to qualify for a mortgage modification, [the defendant] informed the plaintiff that she was in default of her mortgage and [the defendant] threatened that if [the plaintiff] did not accept [the 2008 modification agreement], then it would pursue foreclosure proceedings against the property. Under the threat of foreclosure, the plaintiff [entered into the 2008 modification agreement], as demanded by [the defendant], while continuing to negotiate with [the defendant] for a mortgage modification . . . consistent with [the defendant's] original representations concerning the benefits available for the plaintiff in pursuing [the 2008] mortgage modification . . . ." Notably, the plaintiff's original complaint made no reference to WaMu's conduct pertaining to the 2008 modification agreement.